1    KEKER, VAN NEST & PETERS LLP
     STEVEN P. RAGLAND - # 221076
2    sragland@keker.com
     BENJAMIN BERKOWITZ - # 244441
3    bberkowitz@keker.com
     ERIN E. MEYER - # 274244
4    emeyer@keker.com
     SEAN M. ARENSON - # 310633
5    sarenson@keker.com
     633 Battery Street
6    San Francisco, CA 94111-1809
     Telephone:    415 391 5400
7    Facsimile:    415 397 7188

8    Attorneys for Defendants
     COINBASE, INC., BRIAN ARMSTRONG
9    and DAVID FARMER

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12

13   JEFFREY BERK, on behalf of himself and      Case No. 4:18-cv-01364-VC
     all others similarly situated,
14                                               **DEFENDANTS' MOTION TO COMPEL**
                   Plaintiff,                    **INDIVIDUAL ARBITRATION AND TO**
15                                               **STAY; MEMORANDUM OF POINTS**
             v.                                  **AND AUTHORITIES IN SUPPORT**
16                                               **THEREOF**
     COINBASE, INC., a Delaware Corporation
17   d/b/a Global Digital Asset Exchange         Date:      August 9, 2018
     ("GDAX"), Brian Armstrong and David         Time:      10:00 a.m.
18   Farmer,                                     Dept:      4, 17th Floor
19                 Defendants.                   Judge:     Hon. Vince Chhabria
20                                               Date Filed: March 1, 2018
21                                               Trial Date: None set
22
23
24
25
26
27
28

1267598

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................................1

I.  INTRODUCTION ..............................................................................................................1

II.  STATEMENT OF ISSUES TO BE DECIDED .................................................................2

III.  FACTUAL AND PROCEDURAL BACKGROUND..........................................................2

IV.  LEGAL STANDARD.........................................................................................................4

V.  ARGUMENT......................................................................................................................6

    A.  The User Agreement clearly and unmistakably delegates determination of "gateway" arbitrability questions to the arbitrator....................................................6

    B.  Even if the Court finds that it must decide questions of arbitrability, both "gateway" questions require Plaintiff to arbitrate his claims..................................8

        1.  Berk and Coinbase consented to final and binding individual arbitration by agreeing to the User Agreement..........................................9

        2.  The User Agreement is presumptively valid and enforceable. .................10

        3.  All causes of action asserted in the Complaint fall within the scope of the arbitration clause in the User Agreement. .......................................11

    C.  The individual defendants have standing to enforce the User Agreement because they were acting as Coinbase's agents. ....................................................13

    D.  The action should be stayed pending the completion of Plaintiff's individual arbitration.................................................................................................14

VI.  CONCLUSION..................................................................................................................15

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Federal Cases**

4

*Allied-Bruce Terminix Companies, Inc. v. Dobson*
    513 U.S. 265 (1995)..............................................................................................5

5

6

*Anderson v. Pitney Bowes, Inc.*
    No. 04-cv-4808-SBA, 2005 WL 1048700 (N.D. Cal. May 4, 2005).....................14

7

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)............................................................................................13

8

*AT&T Mobility LLC v. Concepcion*
    563 U.S. 333 (2011)..............................................................................10, 11, 15

9

10

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*
    475 U.S. 643 (1986).........................................................................................1, 9

11

*Boston Telecomms. Grp., Inc. v. Deloitte Touche Tohmatsu*
    249 Fed. App'x 534 (9th Cir. 2007) ....................................................................14

12

13

*Brennan v. Opus Bank*
    796 F.3d 1125 (9th Cir. 2015) ..................................................................1, 5, 6, 7

14

*Chelsea Family Pharm., PLLC v. Medco Health Solutions, Inc.*
    567 F.3d 1191 (10th Cir. 2009) ..........................................................................13

15

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*
    207 F.3d 1126 (9th Cir. 2000) ..............................................................................5

16

17

*Circuit City Stores, Inc. v. Adams*
    279 F.3d 889 (9th Cir. 2002) ................................................................................9

18

*Citizens Bank v. Alafabco, Inc.*
    539 U.S. 52 (2003) (per curiam)...........................................................................4

19

20

*Cordas v. Uber Techs., Inc.*
    228 F. Supp. 3d 985 (N.D. Cal. 2017) ...............................................................7, 9

21

*Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*
    748 F.3d 249 (5th Cir. 2014) ................................................................................6

22

23

*Eshagh v. Terminix Int'l Co. L.P.*
    588 Fed. App'x 703 (9th Cir. 2014) ....................................................................15

24

*Ford v. Nylcare Health Plans*
    141 F.3d 243 (5th Cir. 1998) ..............................................................................13

25

26

*Galen v. Redfin Corp.*
    No. 14-cv-05234-THE, 2015 WL 7734137 (N.D. Cal. Dec. 1, 2015) ....................8

27

28

ii

1267598

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Gilmer v. Interstate/Johnson Lane Corp.*
 500 U.S. 20 (1991) ................................................................................................ 5, 10

*Green Tree Fin. Corp. v. Randolph*
 531 U.S. 79 (2000) .................................................................................................... 11

*Ingalls v. Spotify USA, Inc.*
 No. 16-cv-03533-WHA, 2016 WL 6679561 (N.D. Cal. Nov. 14, 2016) ................................. 7

*Kairy v. Supershuttle Int'l*
 No. 08-cv-02993 JSW, 2012 WL 4343220 (N.D. Cal. Sept. 20, 2012) ................................. 11

*Letizia v. Prudential Bache Sec., Inc.*
 802 F.2d 1185 (9th Cir. 1986) ........................................................................................ 14

*Levin v. Caviar, Inc.*
 146 F. Supp. 3d 1146 (N.D. Cal. 2015) ............................................................................. 10

*Macias v. Excel Bldg. Servs. LLC*
 767 F. Supp. 2d 1002 (N.D. Cal. 2011) ............................................................................... 2

*McLellan v. Fitbit, Inc.*
 No. 3:16-cv-00036-JD, 2017 WL 4551484 (N.D. Cal. Oct. 11, 2017) ................................. 7

*McLellan v. Fitbit, Inc.*
 No. 3:16-cv-00036-JD, 2018 WL 1913832 (N.D. Cal. Jan. 24, 2018) ................................. 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
 460 U.S. 1 (1983) ......................................................................................................... 10

*Nghiem v. NEC Elec., Inc.*
 25 F.3d 1437 (9th Cir. 1994) ............................................................................................ 9

*Nguyen v. Barnes & Noble Inc.*
 763 F.3d 1171 (9th Cir. 2014) .......................................................................................... 9

*Oracle Am., Inc. v. Myriad Grp., Inc.*
 724 F.3d 1069 (9th Cir. 2013) ...................................................................................... 6, 7

*Portland Gen. Elec. Co. v. U.S. Bank Trust Nat'l Ass'n*
 218 F.3d 1085 (9th Cir. 2000) .......................................................................................... 4

*Rent-A-Center, W., Inc. v. Jackson*
 561 U.S. 63 (2010) ........................................................................................................ 6

*Roszak v. U.S. Foodservice, Inc.*
 628 Fed. App'x 513 (9th Cir. Jan. 6, 2016) ......................................................................... 7

*Shearson/Am. Express, Inc. v. McMahon*
 482 U.S. 220 (1987) .................................................................................................. 6, 10

*United States v. Sutcliffe*
 505 F.3d 944 (9th Cir. 2007) ........................................................................................... 5

DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO STAY
Case No. 4:18-cv-01364-VC

1267598

*Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*
    489 U.S. 468 (1989) ................................................................................................ 6

*Zelkind v. Flywheel Networks, Inc.*
    No. 15-cv-03375-WHO, 2015 WL 9994623 (N.D. Cal. Oct. 16, 2015) ................................. 7

*Zenelaj v. Handybook Inc.*
    82 F. Supp. 3d 968 (N.D. Cal. 2015) ..................................................................... 7

**State Cases**

*Armendariz v. Found. Health Psychcare Servs., Inc.*
    24 Cal. 4th 83 (2000) ....................................................................................... 11

*Dream Theater, Inc. v. Dream Theater*
    124 Cal. App. 4th 547 (2004) ........................................................................... 8

*Dryer v. Los Angeles Rams*
    40 Cal. 3d 406 (1985) ..................................................................................... 14

*Greenspan v. LADT, LLC*
    185 Cal. App. 4th 1413 (2010) ........................................................................ 8

*Rodriguez v. Am. Techs., Inc.*
    136 Cal. App. 4th 1110 (2006) ........................................................................ 8

**Federal Statutes**

9 U.S.C. § 2 ...................................................................................................... 5, 9, 10

9 U.S.C. § 3 ...................................................................................................... 14, 15

9 U.S.C. § 4 ...................................................................................................... 2, 6

**State Rules**

Cal. Rule 12(b)(6) ............................................................................................. 4

Cal. Rule 14(a) ................................................................................................. 6

DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO STAY
Case No. 4:18-cv-01364-VC

1267598

1    **TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

2           PLEASE TAKE NOTICE that on August 9, 2018 at 10:00 a.m., or as soon thereafter as

3    this matter may be heard, in the courtroom of the Honorable Vince Chhabria, located in

4    Courtroom 4, 17th Floor of the United States Courthouse, 450 Golden Gate Avenue, San

5    Francisco, CA 94102, Defendants Coinbase, Inc. ("Coinbase"), Brian Armstrong, and David

6    Farmer (collectively, "Defendants") will and hereby do move this Court to compel individual

7    arbitration of Plaintiff's claims and to stay Plaintiff's claims pending the completion of individual

8    (*i.e.*, bilateral) arbitration proceedings.

9           Defendants submit this Motion under the Federal Arbitration Act, 9 U.S.C. §§ 1–16

10   ("FAA") and Federal Rule of Civil Procedure 12(b)(1) based on Plaintiff's agreement to

11   individual arbitration with Coinbase when agreeing to the Coinbase User Agreement.  This

12   Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities,

13   the accompanying Declaration of Jesse Pollak and the exhibits attached thereto, the pleadings and

14   other documents on file in this case, all other matters of which the Court may take judicial notice,

15   and any further argument or evidence that may be received by the Court at the hearing.

16
17   Dated:  April 25, 2018                                KEKER, VAN NEST & PETERS LLP

18

19                                          By:    */s/ Steven P. Ragland*
20                                                 STEVEN P. RAGLAND

21                                                 Attorneys for Defendants
22                                                 COINBASE, INC., BRIAN ARMSTRONG
                                                   and DAVID FARMER
23

24

25

26

27

28

1267598

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On August 30, 2017, Plaintiff Jeffrey Berk signed up for an online account with Defendant Coinbase, a San Francisco-based company that provides a secure online platform for buying, selling, and transferring digital currency like Bitcoin, Ethereum, and Litecoin.  When signing up for his Coinbase account, Berk agreed to a classic, enforceable "clickwrap" Internet agreement, which provides that "any dispute arising under [the User Agreement] shall be finally settled in binding arbitration, on an individual basis."  Berk also "expressly waive[d] trial by jury and right to participate in a class action lawsuit or class-wide arbitration."

Despite having explicitly agreed to arbitrate disputes with Coinbase on an individual basis, Berk chose to pursue his claims, and the claims of a nationwide putative class, in federal court, contrary to the arbitration clause to which the parties agreed.  In this case, Berk's claims revolve around "purchase, sale or trade orders [placed] with Coinbase."  Compl. ¶ 1.  There can be no serious dispute that purchase, sale, or trade transactions made through the Coinbase platform are governed by the User Agreement.  Therefore, Berk's claims arise under the User Agreement and are subject to the arbitration clause and class-action waiver contained therein.  His claims against individual defendants Brian Armstrong and David Farmer—the company's CEO and Director of Communications, respectively—are similarly subject to arbitration because the allegations in the Complaint are limited to conduct in their capacities as agents of Coinbase.

The strong federal policy favoring arbitration, which provides that arbitration agreements must be enforced unless it is clear that they are not susceptible of an interpretation that covers the asserted dispute, makes this so.  *See, e.g.*, *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).  And where, as here, the parties incorporate AAA rules which delegate questions of arbitrability to the arbitrator, this Court's role is limited to determining whether there is "clear and unmistakable" evidence that the parties intended to delegate "gateway" questions of arbitrability.  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130–32 (9th Cir. 2015)

Because a valid arbitration agreement exists between Berk and Coinbase, and because the parties have delegated questions of arbitrability to the arbitrator, the Court should order Berk to

1

1267598

submit his disputes with the Defendants to individual arbitration.  *See* 9 U.S.C. § 4.  The Court should also stay his claims until the arbitration is completed.[1]

## II.     STATEMENT OF ISSUES TO BE DECIDED

The issues to be decided are whether the Court should compel arbitration of Plaintiff's claims on an individual basis and stay this action pending completion of the individual arbitration.

## III.    FACTUAL AND PROCEDURAL BACKGROUND

The Coinbase platform permits account holders to purchase, sell, and conduct financial transactions using digital currencies like Bitcoin, Ethereum, Litecoin, and Bitcoin Cash.  Compl. ¶ 6.  In order to utilize the Coinbase platform, users must sign up for an account.  Upon visiting www.coinbase.com at the time relevant to this Complaint,[2] new users were prompted to enter their email address as shown below:



Pollak Decl., Exhibit 1.[3]  Upon entering an email address, the user was taken to a screen that prompted him or her to enter additional information (such as name and password) in order to create an account.  Users were also shown a "check box" prompting them to agree to Coinbase's User Agreement:

---

[1] The parties have delegated questions of arbitrability to the arbitrator, so to the extent the arbitrator finds that the User Agreement and its class-action waiver are enforceable, Coinbase reserves the right to bring a motion to strike or dismiss the Complaint's class-action allegations. Alternatively, if the Court decides that there is not "clear and unmistakable" evidence of delegation such that the Court must decide "gateway" questions of arbitrability, Coinbase respectfully requests that this Court dismiss all class-action claims from this case at the outset.

[2] All facts described herein regarding the sign-up process and User Agreement were true as of August 30, 2017, the date on which Plaintiff Jeffrey Berk created a Coinbase account and agreed to the User Agreement.  *See* Declaration of Jesse Pollak ("Pollak Decl.") ¶ 4.

[3] "While the Court may not review the merits of the underlying case [i]n deciding a motion to compel arbitration, [it] may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party."  *Macias v. Excel Bldg. Servs. LLC*, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011) (internal quotation marks and citations omitted).

☐ I certify that I am 18 years of age or older, and I agree to the User
Agreement and Privacy Policy.

**CREATE ACCOUNT**

Pollak Decl., Exhibit 2.  A user could not create a Coinbase account without clicking the "check box" indicating acceptance of the User Agreement.  Pollak Decl. ¶ 8.

The "User Agreement" phrase shown above is a hyperlink that, when clicked, took the user to a webpage titled "Coinbase User Agreement" that contained the full text of the agreement. The relevant agreement included a section titled "**Arbitration; Waiver of Class Action**," which states as follows:

> If you have a dispute with Coinbase, we will attempt to resolve any such disputes through our support team. **If we cannot resolve the dispute through our support team, you and we agree that any dispute arising under this Agreement shall be finally settled in binding arbitration, on an individual basis, in accordance with the American Arbitration Association's rules for arbitration of consumer-related disputes (accessible at https://www.adr.org/sites/default/files/Consumer%20Rules.pdf) and you and Coinbase hereby expressly waive trial by jury and right to participate in a class action lawsuit or class-wide arbitration.** The arbitration will be conducted by a single, neutral arbitrator and shall take place in the county or parish in which you reside, or another mutually agreeable location, in the English language. The arbitrator may award any relief that a court of competent jurisdiction could award, including attorneys' fees when authorized by law, and the arbitral decision may be enforced in any court. At your request, hearings may be conducted in person or by telephone and the arbitrator may provide for submitting and determining motions on briefs, without oral hearings. The prevailing party in any action or proceeding to enforce this agreement shall be entitled to costs and attorneys' fees.
>
> If the arbitrator(s) or arbitration administrator would impose filing fees or other administrative costs on you, we will reimburse you, upon request, to the extent such fees or costs would exceed those that you would otherwise have to pay if you were proceeding instead in a court. We will also pay additional fees or costs if required to do so by the arbitration administrator's rules or applicable law. Apart from the foregoing, each Party will be responsible for any other fees or costs, such as attorney fees that the Party may incur. If a court decides that any provision of this section 7.2 is invalid or unenforceable, that provision shall be severed and the other parts of this section 7.2 shall still apply. In any case, the remainder of this User Agreement, will continue to apply.

Pollak Decl., Exhibit 4 ¶ 7.2 (emphasis in original).

Coinbase's records demonstrate that, on August 30, 2017 at 7:17 p.m., Berk accepted the Coinbase User Agreement:

3

1267598

| User | Action | Balance | Location | Source | When | Details (Toggle params) |
|------|--------|---------|----------|--------|------|--------------------------|
| jeff berk | accepted user agreement | 0.00000000 | United States | web | 2017-08-30 7:17 PM PDT | Show \| Params |

Pollak Decl., Exhibit 3.  After he accepted the Coinbase User Agreement and created his account, Berk began buying, selling, and trading digital currencies on the Coinbase platform.  *Id.* ¶ 10. Berk could not have created an account and used the platform if he had not clicked the check box indicating his assent to the User Agreement.  *Id.* ¶ 8.

Notwithstanding Berk's agreement to submit any claims arising under the User Agreement to binding arbitration, he filed a putative nationwide class-action lawsuit with this Court.  The gravamen of Plaintiff's Complaint is that Coinbase did not provide the public with sufficient notice of its intent to support a new digital currency called Bitcoin Cash ("BCH") on its platform.  According to Plaintiff, this put him at a disadvantage relative to Coinbase's employees, who had advance notice of Coinbase's impending launch of BCH support, which allegedly prevented Plaintiff from purchasing BCH as soon as Coinbase began supporting it.  Because the market price of BCH increased in the minutes and hours that followed, Plaintiff asserts that he was wrongfully deprived of the opportunity to acquire BCH at its market price as of the moment Coinbase launched its support for the digital currency.  *See, e.g.*, Compl. ¶¶ 10–14.[4]

## IV.    LEGAL STANDARD

The enforceability of the arbitration clause in the User Agreement is governed by the Federal Arbitration Act ("FAA"), because the FAA "governs any written provision in a 'contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract.'"  *Portland Gen. Elec. Co. v. U.S. Bank Trust Nat'l Ass'n*, 218 F.3d 1085, 1089 (9th Cir. 2000) (quoting 9 U.S.C. § 2).  The term "involving commerce" is the "functional equivalent of the more familiar term 'affecting commerce'[,]" which represents the "broadest permissible exercise of Congress' Commerce Clause Power."  *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (per curiam) (citations omitted). An activity need not be

---

[4] Defendants have also filed a Rule 12(b)(6) motion to dismiss the Complaint for failure to state a claim upon which relief can be granted.  As set forth herein, Coinbase believes that the Plaintiff's claims are subject to arbitration.  In order to preserve their Rule 12(b)(6) arguments, however, Defendants have filed their motion to dismiss for this Court's consideration in the event the instant motion to compel arbitration is denied.

"within the flow of interstate commerce" or even have "a substantial effect on interstate commerce" to fall within the FAA. *See id* at 55–56. Rather, the contracted activity need only affect interstate commerce for the FAA to govern. *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 273–74 (1995).

Here, the transactions at issue involved interstate commerce, as evidenced by the fact that Berk, an Arizona resident (Compl. ¶ 19), was contracting to do business over the Internet with Coinbase, a Delaware corporation headquartered in California. *Id.* ¶ 20. Moreover, where the underlying transactions involve the use of Internet technologies to buy and sell digital currencies, the "involving commerce" requirement has been met. *See, e.g.*, Compl. ¶ 66 (discussing public statements made on the Internet, "which culminated [in] purchases, sales and trade orders on the Coinbase website"); *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) ("[T]he Internet is an instrumentality and channel of interstate commerce.") (internal quotation marks and citation omitted). Accordingly, the FAA governs the arbitration clause in the User Agreement.

Under the FAA, this Court's role in deciding Coinbase's motion to compel individual arbitration is a narrow one. "[T]he [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citation omitted). Generally, the Court determines two "gateway" issues: "(1) whether a valid agreement to arbitrate exists and . . . (2) whether the agreement encompasses the dispute at issue." *Id.* But where the parties have "clearly and unmistakably" delegated questions of arbitrability to the arbitrator, the Court's role is limited to determining the effectiveness of delegation clause. *See Brennan*, 796 F.3d at 1132.

If the Court were to find that the delegation clause is unenforceable, it would be required to answer the "gateway" questions listed above. In making those determinations, the Court must be guided by the FAA, which provides that a written contractual provision to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has repeatedly announced that the FAA creates a strong, liberal federal policy that requires arbitration. *See, e.g.*, *Gilmer v.*

*Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991); *Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–76 (1989); *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987).

## V.    ARGUMENT

### A.    The User Agreement clearly and unmistakably delegates determination of "gateway" arbitrability questions to the arbitrator.

The FAA requires courts to compel arbitration "in accordance with the terms of the [parties'] agreement."  9 U.S.C. § 4.  The U.S. Supreme Court has recognized that parties may contract to delegate to an arbitrator "gateway" questions about the existence of an arbitration agreement and the scope of that agreement.  Indeed, such a delegation clause is "simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."  *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010).  Delegation clauses are enforceable when they "clearly and unmistakably delegate[] arbitrability questions to the arbitrator."  *Brennan*, 796 F.3d at 1130–32; *see also Oracle Am., Inc. v. Myriad Grp., Inc.*, 724 F.3d 1069, 1072 (9th Cir. 2013) (same); *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 262–63 (5th Cir. 2014) (if the parties have delegated questions of arbitrability to the arbitrator, "whether the Plaintiffs' claims are subject to arbitration must be decided in the first instance by the arbitrator, not a court").

Here, the parties delegated the gateway issue of arbitrability to the arbitrator by incorporating the AAA Consumer Arbitration Rules (and including a link to the text of those rules).  Pollak Decl., Exhibit 4 ¶ 7.2.  Specifically, Rule 14(a) of the AAA Rules states that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  AAA Consumer Arbitration Rules at R-14(a).[5]

This is "clear and unmistakable" evidence that the parties agreed to delegate gateway questions of arbitrability.  As the Ninth Circuit has held, "incorporation of the AAA rules

---

[5] The AAA Rules can be found at https://www.adr.org/sites/default/files/Consumer%20Rules.pdf (effective September 1, 2014; last accessed April 23, 2018).

1267598

constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130; *see also Roszak v. U.S. Foodservice, Inc.*, 628 Fed. App'x 513, 513–14 (9th Cir. Jan. 6, 2016) ("[T]he parties incorporated the [AAA] rules into their agreement and therefore agreed to arbitrate the question of arbitrability."); *Oracle America*, 724 F.3d at 1074 ("Virtually every circuit" has found that incorporation of AAA rules indicates that the parties agreed to delegate arbitrability).

Defendants anticipate that Berk will argue that *Brennan* and *Oracle America* do not apply to consumer contracts.  Not so.  While the Ninth Circuit did reserve the question of whether its holding in *Brennan* extended to consumer contracts with "unsophisticated" parties (as it dealt with a commercial contract), the court expressly noted:

> Our holding today should not be interpreted to require that the contracting parties be sophisticated or that the contract be "commercial" before a court may conclude that incorporation of the AAA rules constitutes "clear and unmistakable" evidence of the parties' intent.  Thus, our holding does not foreclose the possibility that this rule could also apply to unsophisticated parties or to consumer contracts.  Indeed, the vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent do so without explicitly limiting that holding to sophisticated parties or to commercial contracts.

796 F.3d at 1130–31 (collecting cases).  As courts in this District have concluded, "[t]his statement strongly indicates approval of other decisions enforcing arbitrability delegation via incorporation of the AAA rules." *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 992 (N.D. Cal. 2017).

Since *Brennan*, district courts in the Northern District and elsewhere within the Ninth Circuit have determined that the "'greater weight of authority has concluded that the holding of [*Brennan*] applies similarly to non-sophisticated parties,'" including in consumer cases. *McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-JD, 2017 WL 4551484, at *2 (N.D. Cal. Oct. 11, 2017) (quoting *Miller v. Time Warner Cable Inc.*, No. 8:16-cv-00329-CAS, 2016 WL 7471302, at *5 (C.D. Cal. Dec. 27, 2016); *see also Cordas*, 228 F. Supp. 3d at 992; *Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 973–75 (N.D. Cal. 2015); *Zelkind v. Flywheel Networks, Inc.*, No. 15-cv-03375-WHO, 2015 WL 9994623, at *3 (N.D. Cal. Oct. 16, 2015); *but see Ingalls v. Spotify USA, Inc.*, No. 16-cv-03533-WHA, 2016 WL 6679561, at *3–4 (N.D. Cal. Nov. 14, 2016).

California law—which governs the User Agreement and Plaintiff's claims "except to the extent governed by federal law"—compels the same result. *See* Pollak Decl., Exhibit 4 ¶ 8.10. California courts have held that, by incorporating AAA rules, "the parties clearly evidenced their intention to accord the arbitrator the authority to determine issues of arbitrability." *Rodriguez v. Am. Techs., Inc.*, 136 Cal. App. 4th 1110, 1123 (2006); *accord Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 557 (2004) (incorporation of AAA rules deemed "clear and unmistakable evidence of the intent that the arbitrator will decide whether a Contested Claim is arbitrable"); *Greenspan v. LADT, LLC*, 185 Cal. App. 4th 1413, 1442 (2010) ("Thus, 'when . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.'") (citations omitted).

Perhaps more importantly, there is no indication here that Berk is an "unsophisticated" party. On the contrary, he signed up with Coinbase in order to invest in digital currency. *See* Compl. ¶¶ 7, 19. When creating his Coinbase account, he listed his occupation as a "Consultant" for BOLT International. Pollak Decl. ¶ 4. These facts suggest at least a "modicum of sophistication" for purposes of a delegation clause analysis. *See, e.g.*, *Galen v. Redfin Corp.*, No. 14-cv-05234-THE, 2015 WL 7734137, at *7 (N.D. Cal. Dec. 1, 2015) (suggesting that a "modicum of sophistication" is sufficient to find that incorporation of AAA rules in an arbitration clause delegates arbitrability questions to the arbitrator).

The delegation clause in the AAA Consumer Arbitration Rules, incorporated into Coinbase's User Agreement, is clear and unmistakable evidence that the parties agreed to delegate arbitrability questions to the arbitrator. Therefore, the Court should refer this case to the AAA arbitrator and stay the action pending resolution of questions of arbitrability.

**B.      Even if the Court finds that it must decide questions of arbitrability, both "gateway" questions require Plaintiff to arbitrate his claims.**

Even if the Court declines to enforce the parties' agreement to arbitrate gateway questions of arbitrability, the Court should nonetheless compel arbitration because (i) the parties entered into a binding contract containing an arbitration clause; and (ii) Plaintiff's claims fall within the

scope of that arbitration clause.

### 1.   Berk and Coinbase consented to final and binding individual arbitration by agreeing to the User Agreement.

The first "gateway" question is whether a valid arbitration agreement exists between the parties.  The answer is yes.

"[A]rbitration is a matter of contract," *AT&T Techs., Inc.*, 475 U.S. at 648 (citations omitted), and state contract law controls whether the parties have agreed to arbitrate.  *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (noting that although the FAA preempts state laws that are only applicable to arbitration agreements, general contract principles and defenses "grounded in state contract law, may operate to invalidate arbitration agreements") (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).  An arbitration agreement need only be in writing, and *no signature by either party is necessary* to create a binding arbitration agreement.  *See* FAA, 9 U.S.C. § 2; *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1439 (9th Cir. 1994) ("While the FAA requires a writing, it does not require that the writing be signed by the parties.") (internal quotations and citation omitted).

Under California law, "mutual assent is the key to contract formation."  *Cordas*, 228 F. Supp. 3d at 988 (citing *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999).  Here, Berk agreed to the User Agreement over the Internet by affirmatively clicking a check box indicating that he "agree[d] to the User Agreement" and then clicking a button to create a Coinbase user account.  *See* Pollak Decl. ¶¶ 7, 9, Exhibits 2–3.  The evidence shows that, had Berk failed to click the check box assenting to the User Agreement, he would have been unable to create a Coinbase user account, and therefore would have been unable to use the Coinbase platform to buy, sell, and trade digital currencies.  *Id.* ¶ 8.

As the Ninth Circuit has explained, "[c]ontracts formed on the Internet come primarily in two flavors: 'clickwrap' (or 'click-through') agreements, in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use; and 'browsewrap' agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen."  *Nguyen v. Barnes & Noble Inc.*, 763

F.3d 1171, 1175–76 (9th Cir. 2014).  Coinbase's User Agreement is a classic "clickwrap" agreement, "a type of agreement that courts routinely find valid and enforceable because the user must affirmatively acknowledge receipt of the terms of the contract."  *McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-JD, 2018 WL 1913832, at *2 (N.D. Cal. Jan. 24, 2018) (citing *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1165 (N.D. Cal. 2016); *Meyer v. Uber Techs.,* 868 F.3d 66, 75 (2d Cir. 2017)).  Specifically, courts in this district consistently find that contracts are formed "when the plaintiff clicked on a button to indicate assent to an agreement in which the terms themselves were accessed by hyperlink."  *Levin v. Caviar, Inc.*, 146 F. Supp. 3d 1146, 1157 (N.D. Cal. 2015) (citing *Tompkins v. 23andMe, Inc.*, 5:13-cv-05682-LHK, 2014 WL 2903752, at *8 (N.D. Cal. June 25, 2014); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 911–12 (N.D. Cal. 2011)).  This makes good sense, because "courts have long upheld contracts where 'the consumer is prompted to examine terms of sale that are located somewhere else.'"  *Levin*, 146 F. Supp. 3d at 1157 (citations omitted).

Here, Coinbase has presented evidence that Berk accepted the User Agreement by affirmatively clicking a check box indicating his assent to the terms of the User Agreement.  By so doing, Berk expressly assented to the User Agreement and is bound by the arbitration clause therein.  For these reasons, the parties entered into a valid contract, and that contract explicitly requires arbitration of the pending claims.

### 2.     The User Agreement is presumptively valid and enforceable.

Arbitration agreements governed by the FAA are presumed valid and enforceable.  *See Shearson/Am. Express, Inc.*, 482 U.S. at 226–27.  This reflects Congress's intent behind the FAA: to reverse longstanding judicial hostility toward arbitration, and evince a "liberal federal policy favoring arbitration agreements."  *See Gilmer*, 500 U.S. at 25 (citations omitted); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  The presumption of validity also reflects the "fundamental principle that arbitration is a matter of contract."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted).  The FAA therefore mandates enforcement of an arbitration clause unless grounds exist "at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

1267598

1    Likewise, the Supreme Court has held that class-action waivers, like the one in the User

2  Agreement, are enforceable under the FAA.  In *Concepcion*, the Court considered the California

3  rule classifying "most collective-arbitration waivers in consumer contracts as unconscionable,"

4  and held that the FAA preempted the California rule.  563 U.S. at 340.  The Court reasoned that

5  "[r]equiring the availability of classwide arbitration interferes with [the] fundamental attributes of

6  arbitration and thus creates a scheme inconsistent with the FAA."  *Id.* at 344.

7    In any event, if Berk contended that the User Agreement and the arbitration terms therein

8  were invalid and unenforceable, it would be his burden—not Coinbase's—to prove that his

9  claims are unsuitable for arbitration.  *See Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91–92

10  (2000).  Because it is not Coinbase's burden to prove enforceability of the User Agreement,

11  Coinbase will address any such arguments, if necessary, on reply.[6]

12       **3.    All causes of action asserted in the Complaint fall within the scope of
             the arbitration clause in the User Agreement.**

13    The Court should compel individual arbitration of all of Berk's causes of action.  Berk and

14  Coinbase agreed that "any dispute arising under this [User] Agreement shall be finally settled in

15  binding arbitration, on an individual basis."  Pollak Decl., Exhibit 4 ¶ 7.2.

16    Every cause of action in the Complaint arises under the User Agreement.  Here, Berk

17  asserts claims for common-law negligence and negligent misrepresentation, as well as for alleged

18  violations of California's Unfair Competition Law.  *See* Compl. ¶¶ 85–99.  Plaintiff alleges that

19  "[b]y operating an exchange through which customers, and particularly retail customers, could

20  buy, sell and trade currency, Defendants owed the highest duties of reasonable care to Coinbase's

21  customers."  *Id.* ¶ 92.  Moreover, Plaintiff alleges that he was harmed by Coinbase's alleged

22  _____

[6] To the extent Berk were to argue that the User Agreement is unenforceable because it is
23  unconscionable, such an argument would lack merit.  Invalidating an arbitration agreement under
California law requires a two-part showing: the party opposing arbitration has the burden of
24  proving that the arbitration provision is both procedurally and substantively unconscionable.
*Kairy v. Supershuttle Int'l*, No. 08-cv-02993 JSW, 2012 WL 4343220, at *7 (N.D. Cal. Sept. 20,
25  2012) (citing *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 795 (2012)).  Berk cannot
satisfy these requirements.  To take but one reason why, California law requires only a "modicum
26  of bilaterality" to overcome a claim of substantive unconscionability.  *Armendariz v. Found.
Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 117 (2000).  Here, the arbitration clause does not
27  contain any one-sided terms that disadvantage Berk.  On the contrary, it provides that Coinbase
will pay for all arbitration fees (except for the portion of arbitration filing fees that do not exceed
28  the amount charged for filing a civil complaint in state court).  Pollak Decl., Exhibit 4 ¶ 7.2.

1267598

conduct "in that [he] received less BCH than [he] would have obtained at the time [he] placed [his] trades." *Id.* ¶ 88.  These allegations, which are representative of Berk's complaint as a whole, arise under the User Agreement.

The User Agreement sets forth the terms and conditions for a customer to use "Coinbase Services."  "Coinbase Services" are defined as:

> One or more hosted Digital Currency wallets that allow users to store certain supported digital currencies, like Bitcoin or Ethereum ("Digital Currency"), and to track, transfer, and manage supported Digital Currencies (the "Hosted Digital Currency Wallet"); Digital Currency conversion services through which users can buy and sell Digital Currencies in transactions with Coinbase (the "Conversion Services"); and a U.S. Dollar account for use in connection with other Coinbase Services (a "USD Wallet" or "Currency Wallet") and for eligible users, a Digital Currency exchange platform ("GDAX").

Pollak Decl., Exhibit 4 ¶ 1.2.  Here, Plaintiff's claims revolve around Coinbase's Conversion Services; namely, Plaintiff's desire to "purchase BCH" on the Coinbase platform.  Compl. ¶ 19. Such "Purchase Transactions" are governed by the Coinbase User Agreement.  For example, Section 4.2 of the User Agreement states that:

> After successfully completing the Verification Procedures, you may purchase supported Digital Currency by linking a valid payment method. You authorize Coinbase to initiate debits from your selected payment method(s) in settlement of purchase transactions. A Conversion Fee (defined below) applies to all purchase transactions. Although Coinbase will attempt to deliver supported Digital Currency to you as promptly as possible, funds may be debited from your selected payment method before Digital Currency is delivered to your Coinbase Account. We may debit your selected payment method, such as your bank account or credit card, as soon as the same day you initiate the purchase but your payment may take three or more business days to process. We will make best efforts to fulfill all transactions, but in the rare circumstance where Coinbase cannot fulfill your purchase order, we will notify you and seek your approval to fulfill the purchase order at the contemporaneous Buy Price Conversion Rate. To secure the performance of your obligations under this Agreement, you grant to Coinbase a lien on and security interest in and to the balances in your account.

Pollak Decl., Exhibit 4 ¶ 4.2.  Moreover, the User Agreement makes plain that Conversion Services, including Purchase Transactions, are "subject to the Coinbase 'Conversion Rate' for the given transaction" and customers "agree, as a condition of using any Coinbase Conversion Services, to accept the Conversion Rate as the sole conversion metric." *Id.* ¶ 4.1.  The gravamen of Berk's complaint is that his "order was executed at prices 100% greater than the price at the time that he submitted his buy order."  Compl. ¶ 19.

1267598

Berk attempts to avoid application of the User Agreement's arbitration clause by alleging that the claims asserted in the Complaint "are a matter of public policy, and do not arise out of the Plaintiff's or any other customer contract." *Id.* ¶ 77.  But such legal conclusions in a complaint are not required to be taken as true, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and a plaintiff cannot rely on "artful pleading to dodge arbitration." *Ford v. Nylcare Health Plans*, 141 F.3d 243, 250–51 (5th Cir. 1998).  Indeed, "[t]o avoid this contrivance, courts look at the facts giving rise to the action and to whether the action '*could be* maintained without reference to the contract,' not . . . to whether the complaint happens to reference the contract." *Id.* at 250–51 (citations omitted); *see also Chelsea Family Pharm., PLLC v. Medco Health Solutions, Inc.*, 567 F.3d 1191, 1198 (10th Cir. 2009) ("Focusing on the facts rather than on a choice of legal labels prevents a creative and artful pleader from drafting around an otherwise-applicable arbitration clause.") (citing *Combined Energies v. CCI, Inc.*, 514 F.3d 168, 172 (1st Cir. 2008); *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157, 164 (4th Cir. 2004)).

Here, there can be no question that Berk's claims will require interpretation of what duties Coinbase owed to customers in connection with the purchase, sale, and trade of digital currency. *See, e.g.*, Compl. ¶ 92.  And those duties are unquestionably governed by the User Agreement, which sets forth the terms and conditions of customer use of Coinbase "Conversion Services." While Berk may wish to ignore the User Agreement in order to avoid arbitration, the law does not allow this Court to do the same.  Accordingly, the Court should find that both counts in Berk's complaint arise under the User Agreement and should be compelled to arbitration.

### C.    The individual defendants have standing to enforce the User Agreement because they were acting as Coinbase's agents.

In the Complaint, Plaintiff argues that the claims do not invoke any provisions of the User Agreement because they are brought against Defendants Brian Armstrong and David Farmer, who are not parties to the User Agreement, in addition to Coinbase.  Compl. ¶ 83.  Armstrong is the Chief Executive Officer of Coinbase, and Farmer is the company's Director of Communications. *Id.* ¶¶ 23–24.  But all of the allegations in the Complaint regarding Armstrong and Farmer revolve around their activities as agents of Coinbase.

It is well-established that "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986).  In *Letizia*, the Ninth Circuit held that individual defendants who were nonsignatories to a Customer Agreement could require the plaintiff to arbitrate his claims against them, because they were acting as agents or employees of the defendant company. *Id.* at 1187–88; *see also Boston Telecomms. Grp., Inc. v. Deloitte Touche Tohmatsu*, 249 Fed. App'x 534, 539 (9th Cir. 2007) (holding that CEO of defendant company had "standing to compel arbitration" because he was acting as an "agent" of the company).  The same result is required under California law.  *See Dryer v. Los Angeles Rams*, 40 Cal. 3d 406, 418 (1985) (holding that "owners, operators, [and] managing agents . . . of a Professional Football Team" were "entitled to the benefit of the arbitration provisions" because they were acting as agents of the football team).

Here, Plaintiff alleges that Defendant Armstrong "is one of the founders and the chief executive officer of Coinbase, and one of its primary spokespersons."  Compl. ¶ 23.  The claims brought against Armstrong are centered on his alleged "statements in relation to the Company's launch of BCH."  *Id.*  Defendant Farmer is "Coinbase's Director of Communications" and is alleged to have "made statements in relation to the Company's mission to support other currencies, and about the launch of BCH."  *Id.* ¶ 24.  Accordingly, there can be no question that the allegations against Armstrong and Farmer are based on their conduct as Coinbase's agents.  And, as Coinbase's agents, they have standing to compel Berk to arbitrate his claims against them.  *Letizia*, 802 F.2d at 1188.

### D.  The action should be stayed pending the completion of Plaintiff's individual arbitration.

When a dispute covered under an arbitration clause is brought in a suit in federal court, the court must stay the action upon application of any of the parties.  9 U.S.C. § 3.  Where, as here, the issues in the case are within the reach of the arbitration agreement, the district court has no discretion to deny a stay.  *See Anderson v. Pitney Bowes, Inc.*, No. 04-cv-4808-SBA, 2005 WL 1048700, at *2 (N.D. Cal. May 4, 2005) ("'If the issues in a case are within the reach of the

---

14

1267598

Agreement,' the court must, upon request by either party, grant a stay of the action pending arbitration.") (quoting *In re Complaint of Hornbeck Offshore Corp.*, 981 F.2d 752, 754 (5th Cir. 1993)).  Coinbase respectfully requests that the Court stay this action under Section 3 of the FAA.

To the extent the Court decides that there is not "clear and unmistakable" evidence that the parties agreed to delegate "gateway" questions of arbitrability, Coinbase also respectfully requests that this Court also dismiss all class-action claims from this case at the outset.  *See Eshagh v. Terminix Int'l Co. L.P.*, 588 Fed. App'x 703, 704 (9th Cir. 2014).

## VI.      CONCLUSION

The "principal purpose" of the FAA is to ensure that private arbitration agreements are enforced according to their terms.  *Concepcion*, 563 U.S. at 344.  Plaintiff agreed to submit any dispute arising under the User Agreement to binding, individual arbitration when he signed up to the Coinbase platform.  The Court should compel Plaintiff to honor his agreement, enforce those arbitration terms, and stay this action under Sections 3 and 4 of the FAA.

Dated:  April 25, 2018                                    KEKER, VAN NEST & PETERS LLP

By:    */s/ Steven P. Ragland*
STEVEN P. RAGLAND

Attorneys for Defendants
COINBASE, INC., BRIAN ARMSTRONG
and DAVID FARMER

1267598