1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND - # 221076
sragland@keker.com
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
ERIN E. MEYER - # 274244
emeyer@keker.com
SEAN M. ARENSON - # 310633
sarenson@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendants
COINBASE, INC., BRIAN ARMSTRONG
and DAVID FARMER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY BERK, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COINBASE, INC., a Delaware Corporation d/b/a Global Digital Asset Exchange ("GDAX"), Brian Armstrong and David Farmer,<br><br>Defendants. | Case No. 4:18-cv-01364-VC<br><br>**DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:       August 9, 2018<br>Time:       10:00 a.m.<br>Dept:       4, 17th Floor<br><br>Judge:      Hon. Vince Chhabria<br><br>Date Filed: March 1, 2018<br><br>Trial Date:  None set |

1269105

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   STATEMENT OF ISSUES TO BE DECIDED ..................................................2

III.  BACKGROUND ..................................................................................................2

IV.   ARGUMENT ........................................................................................................3

       A.    Plaintiff fails to state a claim for relief under the UCL. ..........................3

             1.    Coinbase's alleged conduct was not an unfair business practice................3

                   a.    A company does not act "unfairly" by informing its
                          employees about new initiatives or products. ..................................4

                   b.    If Coinbase gave its employees more advance notice than its
                          customers, that would not be unfair as a matter of law. .................4

                   c.    Plaintiff could have avoided his alleged injury.............................7

             2.    Plaintiff's allegations preclude restitutionary relief....................................8

       B.    Plaintiff fails to state a claim for negligence. .........................................9

             1.    Defendants did not owe a duty to Plaintiff. ................................................9

             2.    The economic loss rule bars Plaintiff's negligence claims.......................11

       C.    Plaintiff fails to state a claim for negligent misrepresentation. ............................13

V.    CONCLUSION...................................................................................................15

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

<u>Federal Cases</u>

4

*Arena Rest. & Lounge LLC v. Southern Glazer's Wine and Spirits, LLC*
    No. 17-CV-03805-LHK, 2018 WL 1805516 (N.D. Cal. Apr. 16, 2018) .......................... 12, 13

5

*Ashcroft v. Iqbal*
6
    556 U.S. 662 (2009)........................................................................................................... 2

7

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007)........................................................................................................... 2

8

*CFTC v. McDonnell*
9
    287 F. Supp. 3d 213 (E.D.N.Y. 2018) .............................................................................. 5

10

*Churchill Vill., L.L.C. v. Gen. Elec. Co.*
    169 F. Supp. 2d 1119 (N.D. Cal. 2000) ............................................................................ 4

11

*Davis v. HSBC Bank Nevada, N.A.*
12
    691 F.3d 1152 (9th Cir. 2012) ........................................................................................ 15

13

*Hernandez v. United States*
    450 F. Supp. 2d 1112 (C.D. Cal. 2006) ............................................................................ 6

14

*James v. McDonald's Corp.*
15
    417 F.3d 672 (7th Cir. 2005) .......................................................................................... 11

16

*Kalitta Air, LLC v. Cent. Tex. Airborne Sys., Inc.*
    No. 96-cv-2494-CW, 2009 WL 1636036 (N.D. Cal. June 8, 2009)................................ 12

17

*Lazy Y Ranch Ltd. v. Behrens*
18
    546 F.3d 580 (9th Cir. 2008) .......................................................................................... 15

19

*Levitt v. Yelp! Inc.*
    765 F.3d 1123 (9th Cir. 2014) .......................................................................................... 7

20

*Mendia v. Garcia*
21
    165 F. Supp. 3d 861 (N.D. Cal. 2016) .......................................................................... 9, 12

22

*NuCal Foods, Inc. v. Quality Egg LLC*
    918 F. Supp. 2d 1023 (E.D. Cal. 2013)........................................................................ 12, 13

23

*Phillips v. Apple Inc.*
24
    No. 15-CV-04879-LHK, 2016 WL 5846992 (N.D. Cal. Oct. 6, 2016)...................... 9, 14, 15

25

*S.M. Wilson & Co. v. Smith Int'l, Inc.*
    587 F.2d 1363 (9th Cir. 1978) ........................................................................................ 12

26

*Stathakos v. Columbia Sportswear Co.*
27
    No. 15-CV-04543-YGR, 2017 WL 1957063 (N.D. Cal. May 11, 2017) ............................ 8

28

*United States v. O'Hagan*
    521 U.S. 642 (1997)........................................................................................................... 6

*United States v. Ritchie*
    342 F.3d 903 (9th Cir. 2003) .............................................................................. 15

*Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*
    178 F. Supp. 2d 1099 (C.D. Cal. 2001) ................................................................ 8

*Williams v. Wells Fargo Bank, N.A.*
    No. 5:13-cv-03387-EJD, 2017 WL 1374693 (N.D. Cal. Apr. 14, 2017) .............................. 13

*Yamauchi v. Cotterman*
    84 F. Supp. 3d 993 (N.D. Cal. 2015) ................................................................. 14

**<u>State Cases</u>**

*Bank of the W. v. Super. Ct.*
    2 Cal. 4th 1254 (1992) ................................................................................ 8

*Bardin v. DaimlerChrysler Corp.*
    136 Cal. App. 4th 1255 (2006) ........................................................................ 4

*Byrum v. Brand*
    219 Cal. App. 3d 926 (1990) ......................................................................... 15

*Camacho v. Auto. Club of S. Cal.*
    142 Cal. App. 4th 1394 (2006) ....................................................................... 7

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*
    20 Cal. 4th 163 (1999) ............................................................................ 4, 5

*Cohen v. S & S Constr. Co.*
    151 Cal. App. 3d 941 (1983) ........................................................................ 14

*Drum v. San Fernando Valley Bar Ass'n*
    182 Cal. App. 4th 247 (2010) ........................................................................ 5

*J'Aire Corp. v. Gregory*
    24 Cal. 3d 799 (1979) ........................................................................... 12, 13

*Korea Supply Co. v. Lockheed Martin Corp.*
    29 Cal. 4th 1134 (2003) ............................................................................. 8

*Melton v. Boustred*
    183 Cal. App. 4th 521 (2010) ........................................................................ 9

*Monreal v. Tobin*
    61 Cal. App. 4th 1337 (1998) ..................................................................... 9, 10

*Ott v. Alfa-Laval Agri, Inc.*
    31 Cal. App. 4th 1439 (1995) .................................................................... 12, 13

*QDOS, Inc. v. Signature Fin., LLC*
    17 Cal. App. 5th 990, 998 (2017) ................................................................... 10

*Quelimane Co., Inc. v. Stewart Title Guar. Co.*
    19 Cal. 4th 26 (1998) .............................................................................. 11

iii

1269105

*Robinson Helicopter Co., Inc. v. Dana Corp.*
    34 Cal. 4th 979 (2004) ......................................................................... 12, 13

*Rodriguez v. Bank of the W.*
    162 Cal. App. 4th 454 (2008) ....................................................................... 10

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*
    72 Cal. App. 4th 861 (1999) ......................................................................... 4

*S.F. Unified Sch. Dist. v. W.R. Grace & Co.*
    37 Cal. App. 4th 1318 (1995) ....................................................................... 12

*Stockton Mortg., Inc. v. Tope*
    233 Cal. App. 4th 437 (2014) ....................................................................... 14

*Yanase v. Auto. Club of S. Cal.*
    212 Cal. App. 3d 468 (1989) ....................................................................... 14

*Zhang v. Super. Ct.*
    57 Cal. 4th 364 (2013) ................................................................................. 4

**Federal Statutes**

Securities Exchange Act of 1934 § 10(b), 15 U.S.C. § 78j(b)........................................ 5

**State Statutes**

Cal. Bus. & Prof. Code § 17200

**Federal Rules**

Fed. R. Civ. P. 9(g) ...................................................................................... 13

Fed. R. Civ. P. 12(b)(6).......................................................................... 2, 3, 15

SEC Rule 10b-5 ............................................................................................ 6

**Other Authorities**

18 Donald C. Langevoort, *Insider Trading Regulation, Enforcement and Prevention* § 1:1 .......... 6

DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT & MPA
Case No. 4:18-cv-01364-VC

1269105

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on August 9, 2018 at 10:00 a.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Vince Chhabria, located in Courtroom 4, 17th Floor of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Coinbase, Inc. ("Coinbase"), Brian Armstrong, and David Farmer (collectively, "Defendants") will and hereby do move this Court for an order dismissing all claims in the plaintiff's Class Action Complaint.

This motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the accompanying Request for Judicial Notice and Declaration of Sean M. Arenson in Support of the Request for Judicial Notice, the pleadings and other documents on file in this case, all other matters of which the Court may take judicial notice, and any further argument or evidence that may be received by the Court at the hearing.

Dated: April 25, 2018                                         KEKER, VAN NEST & PETERS LLP

                                                             By:   /s/  Steven P. Ragland
                                                                   STEVEN P. RAGLAND

                                                             Attorneys for Defendants
                                                             COINBASE, INC., BRIAN ARMSTRONG
                                                             and DAVID FARMER

1269105

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In his putative Class Action Complaint, Plaintiff Jeffrey Berk accuses Defendant Coinbase (along with its chief executive officer, Brian Armstrong, and its director of communications, David Farmer) of permitting "insider trading" in connection with the launch of a new digital currency called Bitcoin Cash, to the detriment of Coinbase's customers. But on closer examination of the actual facts alleged, it becomes clear that Plaintiff brings claims for violation of California's Unfair Competition Law ("UCL") and negligence against Coinbase simply because Coinbase's employees knew about Coinbase's plans to allow trading of this new digital currency before the public did. There are three fundamental problems with Plaintiff's theory.

*First*, the facts alleged do not constitute "insider trading," notwithstanding Plaintiff's attempts to use this highly charged and misleading label. Insider trading involves trading based on material information before it is disclosed to the public. But what Plaintiff describes is the opposite—he finds fault with the fact that Coinbase employees allegedly traded on material information *after* it was disclosed to the public. There is no public policy requiring a company to restrict its employees from trading on public information.

*Second*, Coinbase had no duty to (1) give customers the same amount of notice as employees regarding the launch of a new product or service; or (2) ensure that individual customers were able to purchase goods or services *at the moment* they became available. Imposing such a duty on companies would lead to ridiculous and commercially untenable results.

*Third*, the relief Plaintiff seeks is unavailable as a matter of law. He cannot obtain restitution in connection with his UCL claim because he has not alleged that Coinbase wrongfully received anything as a result of unfair conduct that must be returned to him. Likewise, he cannot obtain money damages in connection with his negligence claims because the economic loss rule bars tort damages in the absence of allegations of damage to any person or physical property.

Coinbase did nothing wrong—even under Plaintiff's mischaracterization of the facts. Plaintiff chose to speculate in a new digital currency and is disappointed that his decision has not paid off as much as he hoped, but his "losses" cannot be placed at the feet of Defendants.

## II.   STATEMENT OF ISSUES TO BE DECIDED

Whether Counts I and II of the Class Action Complaint should be dismissed with prejudice under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## III.   BACKGROUND

The Coinbase platform permits account holders to buy, sell, hold, and transact in digital currencies like Bitcoin, Ethereum, and Litecoin. Compl. ¶¶ 6, 20. Plaintiff's Complaint focuses on a new digital currency launched in 2017 called Bitcoin Cash ("BCH") and Coinbase's conduct surrounding its decision to add support for BCH to its platform.[1] *Id.* ¶¶ 5, 11.

In short, Plaintiff alleges that Coinbase told its employees about its decision to support BCH transactions prior to releasing that information to the public. *Id.* ¶¶ 11, 47, 58. It is not clear from the Complaint how Coinbase could have developed the business and technical capacities to support BCH without revealing this information to its employees. In any event, Plaintiff alleges that Coinbase's employees were able to use their advance notice of Coinbase's rollout plans to more quickly place purchase and/or trade orders on the platform at the time Coinbase opened trading of BCH. *See, e.g.*, *id.* ¶ 60. There is no allegation in the Complaint that Coinbase employees at any point traded in BCH based on material, nonpublic information.

Plaintiff alleges that he placed purchase orders for BCH within five minutes of the time Coinbase enabled trading. *Id.* ¶ 19. His order was not immediately filled. *Id.* Plaintiff alleges that in the few minutes after trading opened, the price of BCH increased significantly. *Id.* ¶ 60. Approximately one hour after trading opened, Coinbase allegedly moved its platforms into "cancel-only" mode due to thinning liquidity, which prevented the placement of new orders while permitting users (like Plaintiff) to cancel previously placed orders that had not yet been filled. *Id.* ¶ 61. Plaintiff did not cancel his pending orders, instead choosing to wait for the orders to be filled at the prevailing market price. Plaintiff alleges that his purchase orders of BCH were filled

---

[1] For purposes of a Rule 12(b)(6) motion to dismiss, the Court must accept material factual allegations as true, although pleadings that are "no more than conclusions, are not entitled to the assumption of truth." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Accordingly, the facts set forth in this Background section are taken from the Complaint to assist the Court in its analysis of this Motion, notwithstanding the fact that Defendants deny the veracity of many allegations in the Complaint.

1   the next day. *Id.* ¶ 19.

2       Based on these facts, Plaintiff brings claims for violation of California's Unfair

3   Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"), against Coinbase, and for

4   negligence and negligent misrepresentation against all Defendants. He brings these claims on

5   behalf of a putative nationwide class of "all Coinbase customers who placed purchase, sale or

6   trade orders with Coinbase or the GDAX in connection with Coinbase's launch of BCH during

7   the period of December 19, 2017 through and including December 21, 2017 . . . and who suffered

8   monetary loss as a result of Defendants' wrongdoing." *Id.* ¶ 1.[2]

9   **IV.   ARGUMENT**

10      Plaintiff brings claims for unfair business practices under the UCL and for negligence and

11  negligent misrepresentation in connection with Coinbase's initiation of support for BCH. For

12  each of these causes of action, Plaintiff fails to allege facts sufficient to state a claim upon which

13  relief can be granted. Thus, each of his claims fails as a matter of law, and the Complaint should

14  be dismissed in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

15      **A.   Plaintiff fails to state a claim for relief under the UCL.**

16      Plaintiff contends that Coinbase violated the UCL by engaging in unfair business

17  practices. Compl. ¶¶ 86–88. This claim fails for two independently sufficient reasons. First,

18  Coinbase's alleged conduct does not constitute an "unfair" business practice under the UCL.

19  Second, even if Coinbase's alleged conduct *could* constitute an unfair business practice,

20  Plaintiff's requested remedy is improper under the UCL, and thus no relief is possible.

21      **1.   Coinbase's alleged conduct was not an unfair business practice.**

22      Plaintiff alleges that "Defendant's conduct allowed Coinbase's agents, employees and

23  others, who were aware that Coinbase was going to support BCH in December 2017, to purchase

24  BCH from other exchanges, and devise their strategy to either purchase or sell their BCH through

25  Coinbase and on the GDAX, once Coinbase announced that it was going to support BCH."

---

26  [2] Defendants have also filed a motion to compel individual arbitration and to stay this action
27  because Plaintiff accepted the terms of Coinbase's User Agreement, which includes a binding
    arbitration clause and class-action waiver. Defendants believe the motion to compel arbitration
28  should be decided first because an order compelling individual arbitration would obviate the need
    for the Court to resolve this Motion.

Compl. ¶ 86. Although Plaintiff attempts to mischaracterize Coinbase's conduct as permitting

"insider trading," the facts as alleged do not violate the UCL as a matter of law.[3]

### a.  A company does not act "unfairly" by informing its employees about new initiatives or products.

At the heart of Plaintiff's UCL claim is his allegation that, by the time Coinbase opened

BCH trading to the public on December 19, 2017, "its employees had been tipped at least a month

before that Coinbase intended to commence support for BCH in December." Compl. ¶ 56.

Plaintiff cannot, however, contend that notifying employees in advance of a company's intent to

launch a new product or service constitutes an "unfair" business practice, as this practice is

unquestionably both routine and necessary for nearly every business. Common logic dictates that

it would have been impossible for Coinbase to begin supporting BCH without informing its

employees, whose job responsibilities would have included preparing to provide this new service.

Nor can Plaintiff seriously contend that the UCL requires a business to provide the same advance

notice to the general public as it gives its employees, as such a rule would encompass an immense

swath of legitimate business activity without serving any conceivable public policy. Where, as

here, a plaintiff's theory under the UCL would impose a "huge" burden on a defendant as

compared to the benefit the public would receive, the challenged conduct will not be found to be

unfair. *See, e.g.*, *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1263 (2006).

### b.  If Coinbase gave its employees more advance notice than its customers, that would not be unfair as a matter of law.

Because Plaintiff cannot fault Coinbase for notifying employees of its intent to support

---

[3] While "[t]he standard for determining what business acts or practices are 'unfair' in consumer actions under the UCL is currently unsettled," *Zhang v. Super. Ct.*, 57 Cal. 4th 364, 380 n.9 (2013), courts in this District have required that "any finding of unfairness . . . under section 17200 be 'tethered to some legislatively declared policy or proof of some actual or threatened impact on competition.'" *Churchill Vill., L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1130 (N.D. Cal. 2000), *aff'd* 361 F.3d 566 (9th Cir. 2004) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 186–87 (1999)). Although the California Supreme Court in *Cel-Tech* limited its holding to competitor cases brought under the UCL, both federal and state courts have found that "the lack of distinction between competitor and consumer in the language of the UCL renders this definition equally valid in the consumer context." *Churchill Vill.*, 169 F. Supp. 2d at 1130 n.10. Here, Plaintiff's claims fail even under the pre-*Cel-Tech* standard, which held that that "an unfair business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886–87 (1999) (internal quotation marks and citations omitted).

BCH, his claim boils down to the allegation that Coinbase did not take adequate steps to prevent employees from "devis[ing] their strategy to either purchase or sell their BCH through Coinbase and on the GDAX, once Coinbase announced that it was going to support BCH." Compl. ¶ 86. But even if Coinbase did give its employees some advantage,[4] Plaintiff does not, and cannot, point to any public policy (much less a "legislatively declared policy" under the *Cel-Tech* standard) requiring a private business to ensure that the public has equal access to its products as its own employees. Such a policy would contradict fundamental tenets of the free enterprise system such as the "sacrosanct" right of a private party, absent any legal provision to the contrary, to "choose to do or not to do business with whomever it pleases." *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 254 (2010).

That a company's practice might disadvantage certain consumers to the benefit of others is insufficient to establish an unfair business practice under the UCL. *Drum* is instructive. There, a mediator sued a bar association under the UCL for refusing to sell him its membership list. The California Court of Appeal affirmed an order sustaining the bar association's demurrer on the ground that an independent private entity's refusal to deal is not an unfair business practice, even if it is to the detriment of the plaintiff and even if it "affects prices." *Id.* at 254–55. Similarly, here, Plaintiff alleges that Coinbase's conduct was unfair because it allowed Coinbase employees to act more quickly than other customers, thereby affecting the market price at the time Plaintiff's order was processed. But *Drum* teaches that the mere fact that prices are affected is not enough to state a UCL claim.

Plaintiff seeks to manufacture a public policy hook for his claims by characterizing Coinbase's conduct as an alleged failure to prevent "insider trading." *See* Compl. ¶¶ 55–56, 63, 67–68, 93. Certainly, there is a strong public policy against insider trading in regulated securities. *See, e.g.*, Securities Exchange Act of 1934 § 10(b), 15 U.S.C. § 78j(b). But Bitcoin Cash is ***not*** a regulated security, so traditional prohibitions against insider trading in securities do not apply here. *See, e.g.*, *CFTC v. McDonnell*, 287 F. Supp. 3d 213, 228–29 (E.D.N.Y. 2018) (holding that

---

[4] Defendants dispute this notion, and Plaintiff himself alleges that Coinbase "maintains a 'strict trading policy and internal guideline for employees' who had been prohibited from trading in Bitcoin Cash for several weeks." Compl. ¶ 56.

1   digital currencies are "goods" more appropriately characterized as commodities).

2       But even if there were a public policy against "insider trading" of digital currencies, the

3   allegations in this case do not constitute insider trading and bear no more than the most

4   superficial resemblance to insider trading. While insider trading can take various forms, the

5   hallmark of every type of insider trading is trading based on "material, nonpublic information."

6   *See United States v. O'Hagan*, 521 U.S. 642, 651–52 (1997) (explaining that "[u]nder the

7   'traditional' or 'classical theory' of insider trading liability, § 10(b) and Rule 10b-5 are violated

8   when a corporate insider trades in the securities of his corporation on the basis of material,

9   nonpublic information," and recognizing the complementary "misappropriation theory" which

10  also "address[es] efforts to capitalize on nonpublic information through the purchase or sale of

11  securities"); 18 Donald C. Langevoort, *Insider Trading Regulation, Enforcement and Prevention*

12  § 1:1 ("'Insider trading' is a term of art that refers to unlawful trading in securities by persons

13  who possess material nonpublic information about the company whose shares are traded or the

14  market for its shares."). By contrast, trading on *public* information is in no sense insider trading,

15  even when that trading is done by an "insider" who knew that information before it became

16  public. For example, district courts in the Ninth Circuit have held that an insider of a regulated,

17  public company can be liable under § 10(b) and Rule 10b-5 "if he traded on material information

18  *without first disclosing to the public*." *See Hernandez v. United States*, 450 F. Supp. 2d 1112,

19  1118 (C.D. Cal. 2006) (emphasis added). It follows that there is no "insider trading" when the

20  relevant information is disclosed to the public prior to the trading.

21      Plaintiff does *not* allege that Coinbase insiders traded in BCH *before* Coinbase announced

22  to the world that it was launching BCH trading, only that they had more time to "devise their

23  strategy" for when "Coinbase announced that it was going to support BCH." This is simply not

24  insider trading. By Plaintiff's own admission, Coinbase "announce[d] that it would support BCH

25  trading on three new books," then "[l]ess than an hour later, Coinbase announced that it was

26  going to enable full trading of the BCH-USD book in five minutes, at 5:20 pm PST, and opened

27  the books three minutes later." Compl. ¶¶ 58, 59. The allegation that "many Coinbase customers

28  noted on various blogs and sites, such as Reddit, they were not aware that Coinbase was trading

BCH, until they actually saw the BCH being bought and sold along with BTC," Compl. ¶ 54, does not overcome Plaintiff's admission that Coinbase *announced to the public in advance* that BCH trading would be opening.

Absent any real connection to insider trading, Plaintiff's theory of this case wilts. Plaintiff complains that his "order was executed at prices 100% greater than the price at the time that he submitted his buy order," but he does not contend (1) that Coinbase made any false or misleading representation regarding the price of BCH, (2) that he did not consent to buy BCH at the price he paid, or (3) that he had any pre-existing right to buy BCH at any particular price. Without a pre-existing right to purchase a product or service under defined terms, there is no unfair conduct under the UCL. The Ninth Circuit recognized this common-sense concept in *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1133 (9th Cir. 2014). There, a plaintiff alleged that an online directory of business reviews manipulated her business's rating when she declined to buy advertising in the directory. The court held that the plaintiff failed to state a claim under the UCL in part because she "had ***no pre-existing right*** to have positive reviews appear on [the] website." *Id.* (emphasis added). The court's analysis is equally applicable in this context. Plaintiff's disagreement with how Coinbase chose to launch BCH trading and his disappointment at not being able to acquire BCH at a lower price do not establish an unfair business practice absent any "pre-existing right" to the benefit Plaintiff hoped that Coinbase would provide him.

### c.    Plaintiff could have avoided his alleged injury.

In *Camacho v. Automobile Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006), the California Court of Appeal held that an "unfair practice" must cause an injury "that consumers themselves could not reasonably have avoided." *Id.* (citations omitted). But Plaintiff's own allegations demonstrate that he could have easily avoided his alleged injury.

Notwithstanding Plaintiff's conclusory allegation that Coinbase is "effectively a monopoly," Compl. ¶ 8, Plaintiff admits that "[a]t the time of the BCH launch, many exchanges supported BCH, including Bitfinex and Kraken, and BCH futures were trading at $475 on the VIABTC." Compl. ¶ 29. Thus, if Plaintiff wanted to buy BCH on or before December 19, 2017, he had ample alternatives in the marketplace to do so. Accordingly, his claim must fail.

2.      **Plaintiff's allegations preclude restitutionary relief.**

"The only nonpunitive monetary relief available under the [UCL] is the disgorgement of money that has been wrongfully obtained or, in the language of the statute, an order 'restor[ing] . . . money . . . which may have been acquired by means of . . . unfair competition.'" *Bank of the W. v. Super. Ct.*, 2 Cal. 4th 1254, 1266 (1992) (citation omitted). Plaintiff here seeks "an order of restitution and disgorgement requiring Coinbase to restore to [him] the additional benefits and monies that Defendant Coinbase received in connection with Class Members' purchase, sales and trades of BCH." Compl. ¶ 89. But Plaintiff does not allege that Coinbase acquired *anything* by means of the alleged unfair business practice, much less anything that could properly be "restored" to Plaintiff. For this additional reason, Plaintiff's UCL claim should be dismissed.

Plaintiff claims he was harmed by Coinbase's conduct because he "lost any opportunity to buy [BCH] at a fair price," and "received less BCH than [he] would have obtained at the time that [he] placed [his] trades." Compl. ¶¶ 61, 88. But these are classic *expectation interests* of the type typically recoverable as *damages*, and not properly recoverable through restitution under the UCL. As this court explained in *Stathakos v. Columbia Sportswear Company*, No. 15-CV-04543-YGR, 2017 WL 1957063, at *11 (N.D. Cal. May 11, 2017), "such would be the equivalent of awarding plaintiffs expectation damages, without accounting for the amount of money plaintiffs actually lost in the process," which is "outside the scope of [California] restitution remedies." *See also Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1122 (C.D. Cal. 2001) ("There is a difference between 'getting' and 'getting back.' The abstract property rights that [plaintiff] invokes do not entitle [him] to get something [he] never had.").

It is well-established that "[w]hile the scope of conduct covered by the UCL is broad, its remedies are limited," and "damages cannot be recovered." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003). A monetary remedy under the UCL is permissibly restitutionary only if it constitutes "the return of money or property that was once in [a plaintiff's] possession," or the recovery of "money or property in which he or she has a vested interest." *Id.* at 1149. Conspicuously absent from the Complaint, however, is any allegation that Coinbase acquired anything of value through its alleged unfair competition, or that Plaintiff lost anything in

8

which he had a prior vested interest. Where, as here, a plaintiff does not "specify the source or the amount of the money that [he] seek[s]," and does not "allege any connection between the money [he] spent and money in [a defendant's] possession," dismissal is appropriate. *Phillips v. Apple Inc.*, No. 15-CV-04879-LHK, 2016 WL 5846992, at *10 (N.D. Cal. Oct. 6, 2016), *aff'd*, No. 16-17189, 2018 WL 946743 (9th Cir. Feb. 20, 2018).

For these reasons, Plaintiff has no possible remedy under the UCL.[5]

### B. Plaintiff fails to state a claim for negligence.

Plaintiff alleges that Defendants were negligent in two ways: (1) "failing to prevent their employees and other insiders from engaging in insider trading"; and (2) inadequately "ensuring that Coinbase could successfully launch BCH, and that its systems could properly handle the number of transactions that would occur once it suddenly launched BCH." Compl. ¶¶ 93–94. "In order to establish negligence under California law, a plaintiff must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages." *Mendia v. Garcia*, 165 F. Supp. 3d 861, 878 (N.D. Cal. 2016) (citation and internal quotation marks omitted). Plaintiff fails to make at least two of these required showings. First, Plaintiff does not allege facts showing that Defendants had a legal duty to prevent the alleged outcomes. Second, Plaintiff seeks to recover only economic losses, which are not recoverable damages in connection with a tort claim under California law. Accordingly, Plaintiff's negligence claim should be dismissed.

### 1. Defendants did not owe a duty to Plaintiff.

"The existence of a duty is a question of law for the court." *Melton v. Boustred*, 183 Cal. App. 4th 521, 531 (2010) (citation and internal quotation marks omitted). "[T]he legal duty to use due care may be of two general types: (1) the duty of a person to use ordinary care in activities from which harm might reasonably be anticipated; and (2) an affirmative duty where the person has a particular relationship to others." *Monreal v. Tobin*, 61 Cal. App. 4th 1337, 1349 (1998). Each of these types of legal duties corresponds to a different level of required care: "With regard to the first type of legal duty, the person is not liable unless he or she is actively careless; with

---

[5] Plaintiff does not seek injunctive relief. His only claim for relief seeks restitution, which, as set forth herein, is unavailable as a matter of law. *See* Compl. at p.16.

1   regard to the second, he or she may be liable for failure to act affirmatively to prevent harm." *Id.*

2   at 1349–50. In other words, the duty to use ordinary care generally prohibits "misfeasance,"

3   whereas a particular relationship giving rise to a heightened affirmative duty is required for mere

4   "nonfeasance" to be actionable. "Thus, in considering whether a person had a legal duty in a

5   particular factual situation, a distinction must be made between claims of liability based upon

6   misfeasance and those based upon nonfeasance." *Id.* at 1350. "[L]iability for nonfeasance is

7   largely limited to those circumstances in which some special relationship can be established. If,

8   on the other hand, the act complained of is one of misfeasance, the question of duty is governed

9   by the standards of ordinary care." *Id.* (citation and internal quotation marks omitted).

10        Plaintiff's negligence allegations sound in nonfeasance, and not misfeasance—that is,

11   Plaintiff alleges that Defendants failed to *affirmatively act* to "prevent" certain negative outcomes

12   or "ensure" certain positive outcomes. Specifically, Defendants were allegedly negligent "in

13   *failing to prevent* their employees and other insiders from engaging in insider trading" and in not

14   "*ensuring* that Coinbase could successfully launch BCH, and that its systems could properly

15   handle the number of transactions that would occur once it suddenly launched BCH." Compl.

16   ¶¶ 93–94 (emphases added). Accordingly, Plaintiff must allege facts establishing some special

17   relationship that forms the basis of Defendants' alleged duty. Plaintiff does not meet this burden.

18        Plaintiff baldly asserts that "[b]y operating an exchange through which customers, and

19   particularly retail customers, could buy, sell and trade currency, Defendants owed the highest

20   duties of reasonable care to Coinbase's customers." Compl. ¶ 92. But, "[i]n the business context

21   . . . , [r]ecognition of a duty [under negligence law] to manage business affairs so as to prevent

22   purely economic loss to third parties in their financial transactions is the exception, not the rule."

23   *QDOS, Inc. v. Signature Fin., LLC*, 17 Cal. App. 5th 990, 998 (2017), *rev. denied* (Mar. 14, 2018)

24   (citations and internal quotation marks omitted). Consequently, the requirement that Plaintiff

25   allege some particular special relationship creating an affirmative duty in Defendants is

26   particularly salient in this "business context." For instance, courts have held that "[a] bank's basic

27   duty of care—to act with reasonable care in its transactions with its customers—arises out of the

28   bank's *contract with its customer*." *Rodriguez v. Bank of the W.*, 162 Cal. App. 4th 454, 460

(2008) (emphasis added). Yet, Plaintiff points to no statute, contractual relationship, or any other basis for this alleged duty apart from the fact that Coinbase operates a business that serves customers. In fact, Plaintiff alleges his claims "are a matter of public policy, and do not arise out of the Plaintiff's or any other customer contract" and specifically alleges that he *did not agree* to Coinbase's User Agreement.[6] Compl. ¶¶ 77–78.

While "public policy may dictate the existence of a duty to third parties," *Quelimane Co., Inc. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 58 (1998), as modified (Sept. 23, 1998), there is no basis in public policy for imposing a legal duty on Defendants to prevent the outcomes that Plaintiff alleges. First, Plaintiff would have this Court conclude that a business should be liable to potential customers when, upon launch of a new product or service, it lacks the capacity to immediately and fully satisfy market demand. That is absurd on its face. A retailer that opens its doors to the public and finds that its store is not spacious enough, its staff not numerous enough, or its inventory not large enough to immediately service all demand in the market has breached no duty to disappointed customers who could not make it in the door or to the front of the line. As anyone who has witnessed a new smartphone launch or Black Friday sale can attest, the public policy Plaintiff advocates would have an untenable chilling effect on commerce to the public's detriment. Simply put, Coinbase owed no legal duty to Plaintiff to ensure that "its systems could properly handle the number of [BCH] transactions that would occur." Compl. ¶ 94.[7]

## 2. The economic loss rule bars Plaintiff's negligence claims.

Plaintiff's claim for negligence and negligent misrepresentation also fails because he does not plead any damages that are cognizable under the law. Damages are a necessary element of a

---

[6] As set forth in Defendants' Motion to Compel Individual Arbitration, filed simultaneously herewith, Plaintiff did in fact agree to the Coinbase User Agreement. And his claims arise under that agreement. Plaintiff cannot argue that his contractual relationship with Coinbase gives rise to an affirmative duty while, at the same time, disavowing the contract in an attempt to avoid its arbitration clause. *See, e.g.*, *James v. McDonald's Corp.*, 417 F.3d 672, 678 (7th Cir. 2005) ("Ms. James cannot claim, on the one hand, that a valid contract obligates McDonald's to redeem her prize and, on the other hand, argue that no contract binds her to the contest rules.").

[7] As explained at length in Section IV.A.1.b, Plaintiff's baseless allegations that Coinbase employees engaged in "insider trading" do not change this analysis. Digital currencies are not regulated securities subject to insider trading rules. And even if they were, what is alleged here (trading *after* public disclosure) does not bear any meaningful resemblance to "insider trading."

1   properly pled negligence claim. *See Mendia*, 165 F. Supp. 3d at 878.

2      Under the economic loss rule, "purely economic losses are not recoverable in tort." *NuCal*

3   *Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1023, 1028 (E.D. Cal. 2013); *see also S.M.*

4   *Wilson & Co. v. Smith Int'l, Inc.*, 587 F.2d 1363, 1376 (9th Cir. 1978) ("Economic losses are not

5   recoverable under negligence."); *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979,

6   988 (2004). "Economic loss generally means pecuniary damage that occurs through loss of value

7   or use of the goods sold or the cost of repair together with consequential lost profits *when there*

8   *has been no claim of personal injury or damage to other property*." *S.F. Unified Sch. Dist. v.*

9   *W.R. Grace & Co.*, 37 Cal. App. 4th 1318, 1327 n.5 (1995) (citation and internal quotation marks

10  omitted) (emphasis in original). Here, Plaintiff does not claim that Defendants' conduct caused

11  any personal injury or damage to other property. Accordingly, the economic loss rule bars

12  Plaintiff's claims, and none of the exceptions to the economic loss rule apply.

13     "Courts have recognized exceptions to the economic loss rule where (1) a special

14  relationship exists between the plaintiff and the defendant, or (2) the conduct violates a duty

15  independent of the contract arising from principles of tort law." *Arena Rest. & Lounge LLC v.*

16  *Southern Glazer's Wine and Spirits, LLC*, No. 17-CV-03805-LHK, 2018 WL 1805516, at *6

17  (N.D. Cal. Apr. 16, 2018) (citations omitted). Neither exception applies here.

18     ***First***, the "special relationship" exception does not apply here. To determine whether a

19  special relationship exists, courts must examine six factors: "(1) the extent to which the

20  transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3)

21  the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection

22  between the defendant's conduct and the injury suffered, (5) the moral blame attached to the

23  defendant's conduct and (6) the policy of preventing future harm." *J'Aire Corp. v. Gregory*, 24

24  Cal. 3d 799, 804 (1979). Plaintiff has not pled any facts demonstrating the existence of a special

25  relationship in his Complaint, nor could he. For example, under the first *J'Aire* factor, the

26  Plaintiff would have to demonstrate that the relevant transaction "affect[ed] the plaintiff in

27  particular as opposed to similarly situated purchasers." *Kalitta Air, LLC v. Cent. Tex. Airborne*

28  *Sys., Inc.*, No. 96-cv-2494-CW, 2009 WL 1636036, at *5 (N.D. Cal. June 8, 2009); *see also Ott v.*

12

1269105

1   *Alfa-Laval Agri, Inc.*, 31 Cal. App. 4th 1439, 1455–56 (1995).[8] Here, Plaintiff alleges that

2   Defendants' conduct affected all Coinbase users in the same way; indeed, he seeks to represent a

3   class of all Coinbase users who sought to purchase BCH during the time period after Defendants'

4   announcements. Compl. ¶ 73. Accordingly, Plaintiff cannot claim that he has a "special

5   relationship" with Defendants in order to avoid application of the economic loss rule.

6       ***Second***, while the California Supreme Court has held that the independent duty exception

7   to the economic loss rule can apply to claims of *intentionally* tortious conduct, *see Robinson*

8   *Helicopter*, 34 Cal. 4th at 991, other courts have found that the exception does not apply to

9   *negligent* conduct. *NuCal Foods*, 918 F. Supp. 2d at 1030. And even if this exception could apply

10   to negligent conduct, it does not apply here. "The California Supreme Court has recognized an

11   independent duty outside the insurance context (1) where a defendant's actions . . . also caused

12   physical injury; (2) for wrongful discharge . . . ; or (3) where the plaintiff was fraudulently

13   induced to enter a contract." *Arena Rest.*, 2018 WL 1805516, at *6. None of the facts as pled in

14   the Complaint fit into any of these three categories.

15       Because Plaintiff's claims fall within the economic loss rule, and he cannot plead around

16   that rule, the Court should dismiss his second cause of action without leave to amend.[9]

17       **C.**    **Plaintiff fails to state a claim for negligent misrepresentation.**

18       Plaintiff claims that Defendants are liable for negligent misrepresentation because they

19   made certain representations "without reasonable grounds for believing them to be true and with

20   the intent that Coinbase customers would rely on [them]."[10] The elements of a negligent

---

[8] The *Ott* court found that "[t]he absence of this foundation [of the first *J'Aire* factor] precludes a finding of 'special relationship' as required by *J'Aire*." 31 Cal. App. 4th at 1455–56.

[9] Plaintiff pleads entitlement to both general and special damages. Compl. ¶ 99. Plaintiff's claim for special damages also fails because special damages must be pled with specificity pursuant to Federal Rule of Civil Procedure 9(g). "Special damages allegations must be enough to inform defending parties as to the nature of the damages claimed in order to avoid surprise; and to inform the court of the substance of the complaint." *Williams v. Wells Fargo Bank, N.A.*, No. 5:13-cv-03387-EJD, 2017 WL 1374693, at *12 (N.D. Cal. Apr. 14, 2017) (citation and internal quotation marks omitted). The Complaint offers no indication as to what special damages Plaintiff is claiming, *see* Compl. ¶ 99, and thus Plaintiff has not properly pled any special damages.

[10] Count II purports to assert claims for negligence *and* negligent misrepresentation. While both theories are disposed of by the arguments in Section IV.B, the negligent misrepresentation theory also fails because Plaintiff does not plead misrepresentation of a "past or existing material fact."

13

misrepresentation claim are "(1) a misrepresentation of a past or existing material fact, (2) made without reasonable ground for believing it to be true, (3) made with the intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1018 (N.D. Cal. 2015) (citation and internal quotation marks omitted). Here, there is no allegation that Defendants made any misrepresentation of a past or existing material fact.

Plaintiff alleges that Defendants made "a number of statements as to when and whether Coinbase could and would support BCH." Compl. ¶ 31. Yet, Plaintiff does not allege that even a *single one* of these statements was false. Without any allegation of a false statement, there is no claim for negligent misrepresentation. *See Phillips*, 2016 WL 5846992, at *11 (dismissing a negligent misrepresentation claim because the plaintiff failed to "allege that [the defendant] made any positively false assertions"); *Yanase v. Auto. Club of S. Cal.*, 212 Cal. App. 3d 468, 472 (1989) ("[Negligent misrepresentation] consists of making a *false statement* honestly believing it is true but without reasonable ground for such belief." (emphasis added)).

Here, Defendants' alleged statements had nothing to do with a "past or existing material fact"; instead, the statements at issue described *future* plans. Predictions, and even promises of future performance, are not actionable under the theory of negligent misrepresentation. *See Stockton Mortg., Inc. v. Tope*, 233 Cal. App. 4th 437, 458 (2014); *Cohen v. S & S Constr. Co.*, 151 Cal. App. 3d 941, 946 (1983). It is immaterial whether each of Defendants' alleged statements regarding the future ultimately proved prophetic; so long as the statements were true when made, they are not actionable as negligent misrepresentations.

The closest Plaintiff comes to alleging a misrepresentation is with regard to a blog post published by Coinbase on August 3, 2017, which Plaintiff asserts "misleadingly reiterated Coinbase's position that it would not support BCH." Compl. ¶ 41. It is unclear how Plaintiff arrived at this nonsensical characterization, however, because the Complaint goes on to quote the blog post: "Over the last several days, we've examined all of the relevant issues and have decided to work on *adding support for bitcoin cash* for Coinbase customers." Compl. ¶ 42 (emphasis added). Plaintiff then asserts that the blog post "announced that Coinbase would not start to

14

1  support BCH until January 1, 2018, 'assuming no additional risks emerge during that time.'"

2  Compl. ¶ 43. But the blog post *actually* said: "We are planning to have support for bitcoin cash **_by_**

3  January 1, 2018, assuming no additional risks emerge during that time." Arenson Decl., Ex. A

4  (emphasis added).[11] Not only does Plaintiff fail to allege that this blog post (or any other public

5  statement) was inaccurate when made, but nothing in the blog post proved inconsistent with

6  Coinbase's eventual launch of BCH in December 2017. In fact, this announcement gave Plaintiff

7  and other Coinbase users ample notice of Coinbase's plans to add support for BCH.

8      Instead of alleging any affirmative misrepresentation, Plaintiff complains that Coinbase

9  "failed to disclose" that it "intended to launch [BCH] in mid-December." Compl. ¶ 47. But,

10  "omissions are not actionable under negligent misrepresentation." *Phillips*, 2016 WL 5846992, at

11  *11 (citations omitted). Rather, "something more than an omission is required to give rise to

12  recovery [under negligent misrepresentation], even as against a fiduciary." *Byrum v. Brand*, 219

13  Cal. App. 3d 926, 941 (1990). "In California, the Legislature . . . has made the cause of action for

14  negligent misrepresentation a form of deceit, which requires an assertion, as a fact, of that which

15  is not true." *Phillips*, 2016 WL 5846992, at *11 (citation and internal quotation marks omitted).

16  Simply put, a plaintiff who alleges nothing more than a "fail[ure] to disclose . . . ha[s] not stated a

17  claim for negligent misrepresentation," *id.*, and that is all that is alleged in this case.

18  **V.     CONCLUSION**

19      For the foregoing reasons, Defendants respectfully request that Plaintiff's Complaint be

20  dismissed in its entirety. Because the defects identified herein are fatal to Plaintiff's claims, the

21  dismissal should be with prejudice.

22

23

---

24  [11] When ruling on a Rule 12(b)(6) motion, "[a] court may consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into one for summary judgment."

25  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012). Importantly, in such cases, the Court need not accept

26  as true allegations that contradict documents that are referenced in the complaint or that are properly subject to judicial notice. *See Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir.

27  2008). As more fully explained in the concurrently-filed Request for Judicial Notice and Declaration of Sean M. Arenson, Plaintiff incorporates the relevant blog post in his Complaint by

28  reference, and Defendants respectfully request that this Court take notice of it.

1    Dated: April 25, 2018                          KEKER, VAN NEST & PETERS LLP

2

3

4                                         By:    /s/ Steven P. Ragland
                                                 STEVEN P. RAGLAND

5
                                                 Attorneys for Defendants
6                                                COINBASE, INC., BRIAN ARMSTRONG
                                                 and DAVID FARMER

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT & MPA
Case No. 4:18-cv-01364-VC

1269105