KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND - # 221076
sragland@keker.com
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
ERIN E. MEYER - # 274244
emeyer@keker.com
NICHOLAS D. MARAIS - # 277846
nmarais@keker.com
SEAN M. ARENSON - # 310633
sarenson@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendants
COINBASE, INC., BRIAN ARMSTRONG
and DAVID FARMER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY BERK, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>COINBASE, INC., a Delaware Corporation d/b/a Global Digital Asset Exchange ("GDAX"), Brian Armstrong and David Farmer,<br><br>        Defendants. | Case No. 3:18-cv-01364-VC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO STAY**<br><br>Date:      September 6, 2018<br>Time:     10:00 a.m.<br>Dept:      4, 17th Floor<br><br>Judge:     Hon. Vince Chhabria<br><br>Date Filed: March 1, 2018<br><br>Trial Date: None set |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT .........................................................................................................................2

    A. The parties clearly and unmistakably delegated questions of arbitrability..............2

    B. The claims in this case arise under the User Agreement. .........................................4

    C. The User Agreement is not unconscionable and must be enforced. ........................7

    D. Plaintiff's claims against Armstrong and Farmer must be arbitrated. .....................8

    E. The Court should stay this case pending individual arbitration.............................10

III. CONCLUSION....................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Baker v. Acad. Of Art Univ. Found.*
   No. 17-cv-03444-JSC, 2017 WL 4418973 (N.D. Cal. Oct. 5, 2017) ........................................ 8

*Bermudez v. PrimeLending*
   No. 12-cv-00987-JAK, 2012 WL 12893080 (C.D. Cal. Aug. 14, 2012) .................................. 7

*Brennan v. Opus Bank*
   796 F.3d 1125 (9th Cir. 2015) ................................................................................................. 2

*Bynum v. Maplebear Inc.*
   160 F. Supp. 3d 527 (E.D.N.Y. 2016) ..................................................................................... 8

*Cape Flattery Ltd. v. Titan Mar., LLC*
   647 F.3d 914 (9th Cir. 2011) ................................................................................................... 1

*CPB Contrs. Pty Ltd. v. Chevron Corp.*
   No. 16-cv-5344-CW, 2017 WL 7310776 (N.D. Cal. Jan. 17, 2017) ..................................... 10

*Galen v. Redfin Corp.*
   No. 14-cv-05234-THE, 2015 WL 7734137 (N.D. Cal. Dec. 1, 2015) ..................................... 2

*Goodrich & Pennington Mortg. Fund, Inc. v. Chase Home Fin., LLC*
   No. 05-cv-636-JLS, 2008 U.S. Dist. LEXIS 129877 (S.D. Cal. Nov. 24, 2008) ..................... 4

*Gregory v. Electro-Mechanical Corp.*
   83 F.3d 382 (11th Cir. 1996) ................................................................................................... 4

*Hopkins & Carley, ALC v. Thomson Elite*
   No. 10-cv-05806-LHK, 2011 WL 1327359 (N.D. Cal. Apr. 6, 2011) ............................. 4, 5, 9

*Kairy v. Supershuttle Int'l*
   No. 08-cv-02993-JSW, 2012 WL 4343220 (N.D. Cal. Sept. 20, 2012) ................................... 7

*Letizia v. Prudential Bache Secs., Inc.*
   802 F.2d 1185 (9th Cir. 1986) ............................................................................................... 10

*McCarthy v. Azure*
   22 F.3d 351 (1st Cir. 1994) .................................................................................................... 10

*Mohamed v. Uber Techs.*
   848 F.3d 1201 (9th Cir. 2016) ............................................................................................. 1, 3

*Monex Dep. Co. v. Gilliam*
   671 F. Supp. 2d 1137 (C.D. Cal. 2009) ................................................................................... 8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
   460 U.S. 1 (1983) ................................................................................................................... 10

*Oracle Am., Inc. v. Myriad Grp., Inc.*
  724 F.3d 1069 (9th Cir. 2013) ............................................................................................. 2

*Roszak v. U.S. Foodservice, Inc.*
  628 Fed. App'x 513 (9th Cir. Jan. 6, 2016) ......................................................................... 2

*Sharp Corp. v. Hisense USA Corp.*
  No. 17-cv-03341-YGR, 2017 WL 6017897 (N.D. Cal. Dec. 5, 2017) .............................. 10

*Swift v. Zynga Game Network, Inc.*
  805 F. Supp. 2d 904 (N.D. Cal. 2011) .......................................................................... 8, 10

*Tompkins v. 23andMe, Inc.*
  840 F.3d 1016 (9th Cir. 2016) ..................................................................................... 1, 7, 8

**State Cases**

*Aanderud v. Super. Ct.*
  13 Cal. App. 5th 880 (2017) ........................................................................................... 3, 4

*Armendariz v. Foundation Health Psychcare Services, Inc.*
  24 Cal. 4th 83 (2000) ........................................................................................................... 8

*Walker v. Countrywide Home Loans, Inc.*
  98 Cal. App. 4th 1158 (2002) .............................................................................................. 5

**Federal Statutes**

9 U.S.C. § 3 ............................................................................................................................... 10

15 U.S.C. § 80b-3 ........................................................................................................................ 2

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ............................................................................................. 5, 6

Cal. Civ. Code § 1670.5(a) .......................................................................................................... 8

Cal. Corp. Code § 25009 ............................................................................................................. 2

Cal. Corp. Code § 25230 ............................................................................................................. 2

## I.   INTRODUCTION

Plaintiff Jeffrey Berk seeks to avoid his obligation to arbitrate his claims against Coinbase and its employees through artful pleading and citation to inapposite cases. At the end of the day, his claims require a factfinder to determine how Coinbase was required to process his purchase orders of Bitcoin Cash ("BCH") after Coinbase launched BCH support in December 2017. Plaintiff argues that Coinbase improperly: (1) processed purchase orders at inflated prices; (2) ignored limiting instructions provided with purchase orders; and (3) canceled trading of BCH. He also brings claims regarding Coinbase's statements (and alleged omissions) about which digital currencies it would support and when. All of these claims require reference to and interpretation of the User Agreement (which governs Coinbase's obligations regarding supported digital currencies and the requirements regarding purchase orders), and therefore *arise under* the User Agreement. *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir. 2011).

But the Court need not even reach the scope of the arbitration agreement, because the parties have delegated that question to the arbitrator. Here, the arbitration agreement incorporates the delegation clause of the AAA Consumer Rules. While Berk claims that the reference to a "court" in the arbitration agreement's severability clause precludes enforcement of the delegation provision, this argument is contradicted by recent Ninth Circuit authority holding that even broader language referring to "exclusive jurisdiction" of state and federal courts in California over "any disputes" arising under the contract does not prevent enforcement of a delegation clause. *See Mohamed v. Uber Techs.*, 848 F.3d 1201, 1209 (9th Cir. 2016).

Plaintiff's remaining attempts to avoid arbitration similarly fail. The contract is not unconscionable—Plaintiff's sole argument that the User Agreement is substantively unconscionable because of a fee-shifting agreement is disposed of by the Ninth Circuit's decision in *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1025 (9th Cir. 2016). And Berk offers no credible argument that Defendants Armstrong and Farmer were acting in anything other than their capacities as employees and agents of Coinbase, so those claims must be arbitrated as well.

Accordingly, the Court should compel arbitration of Plaintiff's claims and stay this case.

## II. ARGUMENT

### A. The parties clearly and unmistakably delegated questions of arbitrability.

Plaintiff advances two arguments opposing enforcement of the delegation clause contained in Rule 14(a) of the AAA Consumer Arbitration Rules.[1]  Both lack merit.

***First***, Plaintiff claims that the "Ninth Circuit has not explicitly held that incorporation of the AAA Rules in consumer agreements involving ***unsophisticated*** parties constitutes clear and unmistakable evidence of delegation."  Dkt. 22 ("Opp.") at 7 (emphasis added).  But the majority of courts applying *Brennan* and *Oracle* to consumer cases have found that incorporation of AAA Rules constitutes clear and unmistakable evidence of delegation.  *See* Dkt. 17 ("Op. Br.") at 7.  Moreover, Berk does not claim in his declaration (submitted with his opposition) that he is unsophisticated.  *See* Dkt. 22-1, Ex. 3.  To the contrary, in correspondence with Coinbase, Berk says he is a "registered investment advisor" through Purple Mountain LLC.  Reply Declaration of Justin Lyn, Ex. 1.  As a registered investment advisor "using coinbase [*sic*] as the dealer for buying cryptocurrency" for his clients, *see id.*, Berk is a sophisticated party.  An investment advisor "engages in the business of advising others . . . as to the value of securities or as to the advisability of investing in, purchasing or selling securities."  Cal. Corp. Code § 25009.  Such advisors must apply for registration either with the Securities and Exchange Commission, *see* 15 U.S.C. § 80b-3, or from state authorities, *see, e.g.*, Cal. Corp. Code § 25230.  An investment advisor necessarily has much more than the "modicum of sophistication" that courts have found sufficient to address any concerns about applying *Brennan* to consumer cases.  *See, e.g.*, *Galen v. Redfin Corp.*, No. 14-cv-05234-THE, 2015 WL 7734137, at *7 (N.D. Cal. Dec. 1, 2015).

***Second***, Plaintiff argues that the arbitration agreement's severability clause creates ambiguity as to whether the parties agreed to delegate questions of arbitrability.  The provision states that "***if*** a court decides that any provision of this section 7.2 is invalid or unenforceable, that

---

[1] Plaintiff takes issue in his introduction with the length of the AAA Rules.  *See* Op. Br. at 1 n.2, 4.  He does not, however, repeat this argument or explain its relevance to the Court's analysis.  Nor could he, as the Ninth Circuit has repeatedly held that incorporation of AAA Rules is sufficient to delegate questions of arbitrability to the arbitrator.  *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015), *Oracle Am., Inc. v. Myriad Grp., Inc.*, 724 F.3d 1069, 1074 (9th Cir. 2013); *Roszak v. U.S. Foodservice, Inc.*, 628 Fed. App'x 513, 513-14 (9th Cir. Jan. 6, 2016).

1286541

provision shall be severed and the other parts of this section 7.2 shall still apply." Dkt. 17-5, Pollak Decl., Ex. 4 § 7.2 (emphasis added).  This generic language does not negate the clear and unmistakable evidence, in the form of adoption of the AAA Rules, that the parties intended to delegate gateway questions to the arbitrator.  While Plaintiff cites several district court cases, he fails to cite the more recent and controlling Ninth Circuit authority that squarely rejects his argument.  In *Mohamed*, 848 F.3d at 1209,[2] the plaintiff argued that the delegation provision was not "clear and unmistakable" because the agreement also contained "venue provisions granting state or federal courts in San Francisco 'exclusive jurisdiction' over '***any*** disputes, actions, claims or causes of action arising out of or in connection with this Agreement.'" *Id.* (emphasis added).  The Ninth Circuit rejected this argument as "artificial." *Id.*  Even where parties have clearly and unmistakably delegated questions of arbitrability to the arbitrator, the Ninth Circuit observed, "it may be necessary to file an action in court to enforce an arbitration agreement, or to obtain a judgment enforcing an arbitration award, and the parties may need to invoke the jurisdiction of a court to obtain other remedies." *Id.* (citation omitted).  Accordingly, a conditional reference to a court "does not conflict with or undermine the agreement's unambiguous statement identifying arbitrable claims and arguments." *Id.*  In *Mohamed*, the Ninth Circuit found that reference to "***exclusive jurisdiction***" of state and federal courts in California over "***any disputes***" arising out of the contract was not enough to defeat the parties' clear and unmistakable delegation of gateway questions to the arbitrator. *Id.* (emphases added).  *Mohamed* compels the same outcome here: the parties included a generic severability clause to protect the arbitration provision ***in the event*** that a court found some portion of the provision to be invalid or unenforceable.  Nothing about this sentence in any way negates the delegation clause contained within the AAA Rules.

Recent California appellate authority compels the same conclusion.  In *Aanderud v. Super. Ct.*, 13 Cal. App. 5th 880 (2017), the Court of Appeal held that a severability clause's reference to a court does not preclude delegation where the arbitration agreement provides for small claims court jurisdiction over certain claims.  *Id.* at 894.  The same is true here.  The AAA Consumer Rules state that "[i]f a party's claim is within the jurisdiction of a small claims court, either party

---

[2] *Mohamed* post-dates all of the district court and state authority cited in Plaintiff's brief.

3
DEFENDANTS' REPLY ISO MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO STAY
Case No. 3:18-cv-01364-VC

1286541

may choose to take the claim to that court instead of arbitration." AAA Consumer Arbitration Rules at R-9.[3] Thus, the AAA Rules provide for certain circumstances in which a court might be asked to review and interpret the User Agreement. But, just as in *Aanderud*, this fact does not limit the effectiveness of the delegation clause.

Accordingly, the Court should enforce the parties' delegation clause and order the gateway arbitrability issues to be submitted to the arbitrator.

### B. The claims in this case arise under the User Agreement.

The parties are required to arbitrate "any dispute arising under" the User Agreement. Pollak Decl., Ex. 4 § 7.2. Berk argues that his claims sound in tort, and not contract, and therefore are not subject to arbitration. But Berk is wrong as a matter of well-settled law. Where a plaintiff's claims require "reference to the underlying contract, interpretation of the parties' agreement, or examination of performance under the contract," even narrow arbitration clauses require the court to compel arbitration. *Hopkins & Carley, ALC v. Thomson Elite*, No. 10-cv-05806-LHK, 2011 WL 1327359, at *6-7 (N.D. Cal. Apr. 6, 2011) (citing *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292 (9th Cir. 1994); *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458 (9th Cir. 1983)); *see also Goodrich & Pennington Mortg. Fund, Inc. v. Chase Home Fin., LLC*, No. 05-cv-636-JLS, 2008 U.S. Dist. LEXIS 129877, at *13 (S.D. Cal. Nov. 24, 2008) (compelling arbitration of tort claims because they "relat[ed] to the interpretation and performance of the contract itself") (internal quotation marks omitted).

This is true regardless of whether the claims are based upon alleged statutory violations, tortious conduct, or breaches of contract. *See Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 384 (11th Cir. 1996) ("Whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted.") (citing *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2d Cir. 1987) ("If the allegations underlying the claims 'touch matters' covered by the parties' sales agreements, then those claims must be arbitrated, whatever the legal labels attached to them.")). Where the parties' claims and

---

[3] The AAA Rules can be found at https://www.adr.org/sites/default/files/Consumer%20Rules.pdf (effective September 1, 2014; last accessed August 6, 2018).

defenses are "inextricably bound up with questions of contract interpretation, performance, and breach," they "arise under" the agreement and are subject to arbitration. *Hopkins*, *supra*, at *6. Moreover, any doubts must be resolved in favor of arbitration. *Id.* at *7.

In this case, the User Agreement defines the relationship between Berk and Coinbase and is central to any claim. Berk's Section 17200 claim, for example, will require reference to and interpretation of the User Agreement because Coinbase's compliance with contract terms is central in determining whether a business practice is "unfair." *See, e.g.*, *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1176-77 (2002) (holding that conduct permitted under the parties' contract was not unfair). Moreover, Berk's opposition and amended complaint make plain that interpretation and enforcement of the User Agreement will be necessary to resolve all of his claims against Defendants. For example:

In connection with each of his four causes of action,[4] Plaintiff alleges that Defendants made "misrepresentations and omissions regarding whether and when Coinbase would support BCH." Opp. at 1; *see* Dkt. 33, First Am. Compl. ("FAC") ¶¶ 43, 116, 124, 131, 136; Dkt. 1, Compl. ¶¶ 86, 94.[5] To determine whether an "omission" about supported digital currencies is actionable, a factfinder will have to look to the User Agreement. *See* Pollak Decl., Ex. 4 § 3.1 ("The Hosted Digital Currency Wallet services are available [for] those Digital Currencies that Coinbase, ***in its sole discretion***, decides to support. The Digital Currencies that Coinbase supports may change from time to time.") (emphasis added).

To support all four causes of action, Plaintiff also alleges that "the launch of BCH was disastrous . . . which led to the price of BCH skyrocketing . . . , leading to the halt sales [*sic*] of BCH at these inflated prices, but Coinbase's continued recognition of purchases at artificially inflated prices, generating fees." Opp. at 2; *see* FAC ¶¶ 64, 67, 115, 117, 119, 124-25, 129, 131,

---

[4] In order, the four causes of action in the Amended Complaint are: (1) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; (2) negligence; (3) negligent misrepresentation; and (4) violation of the Commodity Exchange Act ("CEA").

[5] Plaintiff amended his complaint to add a CEA claim after Defendants filed their motion to compel arbitration. The facts supporting Plaintiff's claims however, are nearly identical in both the initial and amended complaints. Accordingly, to show that Plaintiff's claims require reference to and interpretation of the User Agreement, Defendants cite to the same facts as pled in both the initial and amended complaints.

136, 138; Compl. ¶¶ 57-62, 94.  Plaintiff alleges Coinbase "allowed two minutes of trading . . . and then shut down selling (but still took purchase orders and then filled them at inflated prices, and ignored limit orders)."  Opp. at 2-3.  To determine whether Coinbase improperly recognized purchase orders at inflated prices or ignored limit orders, it is necessary to interpret the User Agreement "purchase transactions" provision:

> **Purchase Transactions**. . . . [Y]ou may purchase supported Digital Currency by linking a valid payment method. You authorize Coinbase to initiate debits from your selected payment method(s) in settlement of purchase transactions. A Conversion Fee . . . applies to all purchase transactions. Although Coinbase will attempt to deliver supported Digital Currency to you as promptly as possible, funds may be debited from your selected payment method before Digital Currency is delivered . . . . We may debit your selected payment method, such as your bank account or credit card, as soon as the same day you initiate the purchase but your payment may take three or more business days to process. We will make best efforts to fulfill all transactions, but in the rare circumstance where Coinbase cannot fulfill your purchase order, we will notify you and seek your approval to fulfill the purchase order at the contemporaneous Buy Price Conversion Rate.

*See* Pollak Decl., Ex. 4 § 4.2.  The factfinder will also need to interpret the User Agreement's language regarding cancellations.  *Id.* §§ 3.1 ("Coinbase cannot reverse a Digital Currency transaction which has been broadcast to [the] Digital Currency network"); 4.1 ("Coinbase does not guarantee the availability of its Conversion Service"); 4.5 (discussing reversals and cancellations of orders).

In support of his Section 17200 claim, Plaintiff alleges that Coinbase "changed the priority rules governing the GDAX, the exchange run by Coinbase, and the 'back room' for its Coinbase retail customers, in mid stream from requiring priority trading to eliminating that provision."  Opp. at 2; FAC ¶ 115; Compl. ¶ 69.  But the "Trading Rules" governing GDAX are incorporated in the User Agreement.  *See* Pollak Decl., Ex. 4 at Part 2, § 2.1.

In addition to all of these allegations that will require interpretation of the User Agreement, Plaintiff argues that the User Agreement contemplates "customers will bringing [*sic*] tort claims."  Opp. at 3 n. 10.  But this argument *supports* Defendants' position.  Section 8.3 of the User Agreement is titled "Limitation of Liability" and places limits on damages that can be recovered from Coinbase, including for tort claims that arise out of the "***use of the . . . Coinbase Services, or this Agreement***."  Pollak Decl., Ex. 4 § 8.3 (emphasis added).  Coinbase Services are

1  defined as "Conversion Services," such as the fulfillment of buy or sell orders, the Coinbase
2  Currency Wallet, and GDAX. *Id.* § 1.2. Accordingly, Section 8.3 anticipates that tort claims can
3  arise under the User Agreement and therefore be subject to arbitration.[6]

4  In light of the fact that the core factual allegations and legal claims in this case require
5  reference to and interpretation of the User Agreement, Plaintiff's claims fall squarely within the
6  scope of the arbitration agreement.[7] He cannot rely on artful pleading to avoid arbitration.

### C. The User Agreement is not unconscionable and must be enforced.

Under California law, a plaintiff claiming that a contract is unconscionable has the burden to prove both substantive *and* procedural unconscionability. *Kairy v. Supershuttle Int'l*, No. 08-cv-02993-JSW, 2012 WL 4343220 (N.D. Cal. Sept. 20, 2012) (citation omitted).

Plaintiff's sole argument regarding substantive unconscionability is that the User Agreement includes a fee-shifting provision for actions to enforce the arbitration agreement. Opp. at 13. But the Ninth Circuit has held that fee-shifting provisions in consumer agreements ***do not*** render a contract substantively unconscionable, explicitly holding "that the bilateral attorneys' fee shifting clause in [a consumer contract] is not unconscionable under California law." *Tompkins*, 840 F.3d at 1025 (citing *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015); *Santisas v. Goodin*, 17 Cal. 4th 599, 608 (1998); Cal. Civ. Code § 1717). The cases cited in Plaintiff's brief do not, and cannot, refute the Ninth Circuit's holding in *Tompkins*. Both of the cases Plaintiff cites involved employment claims, and the holdings in those cases do not apply in a consumer context. *Bermudez v. PrimeLending*, No. 12-cv-00987-JAK, 2012 WL 12893080, at *6-10 (C.D. Cal. Aug. 14, 2012), relies primarily on the standard set forth in

---

[6] Plaintiff's assertion that Defendants' motion to dismiss "admits" the negligence claim is not arbitrable is absurd. Defendants expressly stated that the motion to dismiss was brought ***only*** in the alternative. Indeed, Defendants explained that an order compelling arbitration "would obviate the need for the Court to resolve" the motion to dismiss. *See* Dkt. 18 at 3 n.2.

[7] Plaintiff's reference to *Leidel v. Coinbase* is misplaced. In *Leidel*, the Eleventh Circuit held that the claims did not "arise under" the User Agreement because they "rely on obligations . . . ***to persons who are strangers to the User Agreements***." 729 Fed. App'x 883, 888 (11th Cir. 2018) (emphasis added). The plaintiff in *Leidel* never signed the User Agreement, and instead was the customer of someone who signed the User Agreement. Here, in contrast, the claims are brought by a Coinbase customer who is seeking benefits (namely, to enforce Coinbase's obligations with respect to purchase orders) under a contract to which he is a party.

*Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83 (2000). But both the Ninth Circuit and the California Supreme Court have held that *Armendariz* "is limited to the employment context." *Tompkins*, 840 F.3d at 1026 (quoting *Sanchez*, 61 Cal. 4th at 918-19). The second case Plaintiff cites, *Bynum v. Maplebear Inc.*, 160 F. Supp. 3d 527, 537 (E.D.N.Y. 2016), was also an employment case and does not involve any meaningful discussion or decision on the unconscionability (or lack thereof) of fee-shifting agreements because "the parties agreed to strike the . . . fee-related provisions" in the contract. *Id.* at 538. Accordingly, the Ninth Circuit's decision in *Tompkins* is binding, and the Court should enforce the contract as written.[8]

Even if Plaintiff could prove substantive unconscionability—and he cannot—he would be unable to prove procedural unconscionability because as "a consumer with options," he had a meaningful choice to use other exchanges or forgo digital currency trading altogether. *Baker v. Acad. Of Art Univ. Found.*, No. 17-cv-03444-JSC, 2017 WL 4418973, at *4 (N.D. Cal. Oct. 5, 2017); *Monex Dep. Co. v. Gilliam*, 671 F. Supp. 2d 1137, 1144 (C.D. Cal. 2009) (contract not procedurally unconscionable because "investors had many reasonable and realistic market alternatives to opening Monex Atlas accounts, including the option of not investing") (citation omitted). Here, because there were other exchanges available, FAC ¶¶ 11-12, 70, 80, and because Plaintiff had the option to forgo trading altogether, the contract is not unconscionable.

### D. Plaintiff's claims against Armstrong and Farmer must be arbitrated.

Plaintiff is wrong that his claims against Defendants Brian Armstrong and David Farmer are not subject to the arbitration provision of the User Agreement. Plaintiff does correctly state the test in the Ninth Circuit for determining whether non-signatories can enforce arbitration agreements: "A nonsignatory can compel a signatory to arbitrate based on agency principles . . . so long as (1) the wrongful acts of the agents for which they are sued relate to their behavior as agents or in their capacities as agents . . . and (2) the claims against the agents arise out of or relate to the contract containing the arbitration clause." *Swift v. Zynga Game Network, Inc.*, 805

---

[8] Even if the Court were to find that the fee-shifting provision was unconscionable, the appropriate remedy would be to sever it and enforce the remainder of the provision in accordance with California law and User Agreement's severability provision. Pollak Decl., Ex. 4 § 7.2; *see* Cal. Civ. Code § 1670.5(a) (requiring courts to sever unconscionable provisions where possible).

F. Supp. 2d 904, 916 (N.D. Cal. 2011) (citing *Letizia v. Prudential Bache Secs., Inc.*, 802 F.2d 1185 (9th Cir. 1986); *Britton v. Co-op Banking Group*, 4 F.3d 742 (9th Cir. 1993)). Plaintiff does not dispute the first prong—that the alleged conduct of Defendants Armstrong and Farmer relates to their behavior as agents of Coinbase. *See* Opp. at 14.[9]

Rather, Plaintiff contends that the claims against Defendants Armstrong and Farmer are not arbitrable because they do not arise under the User Agreement. But as discussed in Section II.B, *supra*, Plaintiff's claims squarely arise under the User Agreement. For the same reasons set forth above, the claims against Armstrong and Farmer also must be arbitrated. For example, Plaintiff alleges that these Coinbase executives made negligent misrepresentations because they "tweeted or blogged that Coinbase would not support BCH until it was satisfied that there was little risk in doing so" and that "Coinbase would only support *withdrawals*." FAC ¶ 10 (emphasis in original). Plaintiff argues that these misrepresentations were negligent because "Coinbase announced that it was launching or supporting all buying, selling and trading in BCH within two minutes of the Launch." *Id.* But the User Agreement addresses which digital currencies Coinbase supports, and how and when Coinbase can choose to change that list of digital currencies. *See, e.g.*, Pollak Decl., Ex. 4 § 3.1. Thus, these claims are "inextricably bound" with, and arise under, the User Agreement. *See Hopkins*, 2011 WL 1327359, at *6.

Similarly, Plaintiff alleges that Defendant Armstrong "used the Launch to manipulate the price of BCH and took advantage of it by filling buy orders from investors at hyperinflated prices and cancelled sales that would have caused it to sell out its own reserve of BCH." FAC ¶ 18. But Coinbase's obligations to customers regarding "filling buy orders" and "cancel[ing] sales" are ***governed by the terms of the User Agreement***. *See* Pollak Decl., Ex. 4 §§ 3.1, 4.2, 4.5.

Plaintiff's claims ultimately involve digital currency conversion services; namely, the way in which Coinbase offers to fulfill buy and sell orders for digital currencies that it chooses to support. Those conversion services are governed by the User Agreement, and any dispute related to those services "arises under" the User Agreement. Because Armstrong and Farmer were

---

[9] Indeed, Plaintiff directly alleges in his amended complaint that Armstrong and Farmer were acting within the scope of their employment at Coinbase. FAC ¶ 133 ("There is a strong public interest in Armstrong's and Farmer's proper and non-negligent performance of their duties.").

allegedly ***acting as agents of Coinbase***, claims that relate to their duties at Coinbase necessarily arise under the User Agreement and are therefore governed by the arbitration agreement therein.[10]

### E. The Court should stay this case pending individual arbitration.

As set forth in Defendant's opening papers, the Court is required by the FAA to stay all claims that fall within the scope of the arbitration agreement.  9 U.S.C. § 3.  Plaintiff argues that the claims against Armstrong and Farmer should not be stayed even if claims against Coinbase are compelled to arbitration.  Opp. at 15.  But the Supreme Court has noted that "[i]t may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983).  Courts in this district routinely stay claims against non-signatories pending arbitration where the claims against the various defendants overlap.  *See, e.g.*, *Swift*, 805 F. Supp. 2d at 917; *Sharp Corp. v. Hisense USA Corp.*, No. 17-cv-03341-YGR, 2017 WL 6017897, at *5 (N.D. Cal. Dec. 5, 2017) ("A stay should be granted where the resolution of issues in the arbitration would be determinative of the issues in the lawsuit.") (citation omitted); *CPB Contrs. Pty Ltd. v. Chevron Corp.*, No. 16-cv-5344-CW, 2017 WL 7310776, at *5 (N.D. Cal. Jan. 17, 2017) (granting stay where "the claims in this case are based on the same operative facts as Plaintiff's claims that are currently being arbitrated against Chevron Australia") (citation omitted).  Here, the claims against Armstrong and Farmer are inextricably intertwined with those against Coinbase.  Accordingly, even if the Court were to find some claims non-arbitrable, the Court should stay all claims pending arbitration.

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to compel individual arbitration and to stay this case pending arbitration proceedings.

---

[10] Plaintiff's citation to *Amisil* for his argument that tort claims against officers are unlikely to arise out of an agreement with the company is puzzling.  The cited language comes not from the *Amisil* court's analysis, but instead from a First Circuit case that the *Amisil* court ***chose not to follow***.  *See* 622 F. Supp. 2d at 834 (quoting *McCarthy v. Azure*, 22 F.3d 351, 359 (1st Cir. 1994)).  Moreover, in *McCarthy*, a non-signatory to a ***purchase*** agreement was attempting to apply the arbitration clause in that agreement to claims about ***post-transaction*** conduct.  *McCarthy* is therefore not helpful in the analysis here (and, moreover, is not binding on this Court because it "cannot be reconciled with the result in *Letizia*").  *Amisil*, 622 F. Supp. 2d at 834.

Dated: August 10, 2018                              KEKER, VAN NEST & PETERS LLP

                                            By:   */s/ Steven P. Ragland*
                                                  STEVEN P. RAGLAND

                                                  Attorneys for Defendants
                                                  COINBASE, INC., BRIAN ARMSTRONG
                                                  and DAVID FARMER