KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND - # 221076
sragland@keker.com
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
ERIN E. MEYER - # 274244
emeyer@keker.com
SEAN M. ARENSON - # 310633
sarenson@keker.com
MAYA PERELMAN - # 318554
mperelman@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendants
COINBASE, INC., BRIAN ARMSTRONG
and DAVID FARMER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY BERK, WILLIAM CROWE, PREETHAM PERIASWAMI, NATHANIEL PYRON, SPENCER SOLTAU, MICHAEL SHRIBER, and NIKO YOUNTS, on behalf of themselves and all others similarly situated,<br><br>                Plaintiff,<br><br>       v.<br><br>COINBASE, INC., a Delaware Corporation d/b/a Global Digital Asset Exchange ("GDAX"), Brian Armstrong and David Farmer,<br><br>                Defendants. | Case No. 3:18-cv-01364-VC<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO STAY**<br><br>Date: April 25, 2019<br>Time: 10:00 a.m.<br>Dept: 4, 17th Floor<br><br>Judge: Hon. Vince Chhabria<br><br>Date Filed: March 1, 2018<br><br>Trial Date: None set |

REPLY BRIEF IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO COMPEL INDIVIDUAL
ARBITRATION AND TO STAY
Case No. 3:18-cv-01364-VC

1316773

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT..........................................................................................................................2

    A. Plaintiffs' claims arise under the User Agreement and therefore fall within the scope of the arbitration clause.......................................................................2

        1. Plaintiffs' claims are inextricably intertwined with Plaintiffs' and Coinbase's rights and obligations set forth in the User Agreement.............2

        2. The Trading Rules are incorporated into the User Agreement and apply to all of the Plaintiffs...........................................................................6

    B. The parties clearly and unmistakably delegated questions of arbitrability..............7

    C. The User Agreement is not unconscionable and must be enforced. .......................8

    D. Plaintiffs' claims against Armstrong and Farmer must be arbitrated. ....................9

III. CONCLUSION..................................................................................................................10

i
REPLY BRIEF IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO STAY
Case No. 3:18-cv-01364-VC

1316773

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ajamian v. CantorCO2e, L.P.*,
   203 Cal. App. 4th 771 (2012) ..............................................................................................8

*Amisil Holdings Ltd. v. Clarium Capital Mgmt.*,
   622 F. Supp. 2d 825 (N.D. Cal. 2007) ..............................................................................9, 10

*Baker v. Acad. Of Art Univ. Found.*,
   No. 17-cv-03444-JSC, 2017 WL 4418973 (N.D. Cal. Oct. 5, 2017) .........................................9

*Blue Shield of California Life & Health Ins. Co. v. Superior Court*,
   192 Cal. App. 4th 727 (2011) ..............................................................................................6

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) ..............................................................................................7

*Cape Flattery Ltd. v. Titan Mar., LLC*,
   647 F.3d 914 (9th Cir. 2011) ................................................................................................5

*Comer v. Micor, Inc.*,
   436 F.3d 1098 (9th Cir. 2006) ..............................................................................................9

*DeVries v. Experian Info. Sols., Inc.*,
   No. 16-CV-02953-WHO, 2017 WL 733096 (N.D. Cal. Feb. 24, 2017) ..................................8

*EFund Capital Partners v. Pless*,
   150 Cal. App. 4th 1311 (2007) ............................................................................................6

*Gregory v. Electro-Mech. Corp.*,
   83 F.3d 382 (11th Cir. 1996) ................................................................................................5

*Han v. Samsung Telecommunications Am.*,
   LLC, No. CV 13-3823-GW AJWX, 2014 WL 505999, at *2 (C.D. Cal. Jan. 30, 2014) .........................................................................................................................8

*Hopkins & Carley, ALC v. Thomson Elite*,
   No. 10-CV-05806-LHK, 2011 WL 1327359 (N.D. Cal. Apr. 6, 2011) ...............................2, 4

*Kaiser Cement Corp. v. Fischbach & Moore, Inc.*,
   793 F.2d 1100 (9th Cir. 1986) ..............................................................................................3

*Leidel v. Coinbase, Inc.*,
   729 F. App'x. 883 (11th Cir. 2018) ......................................................................................6

ii
REPLY BRIEF IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO COMPEL INDIVIDUAL
ARBITRATION AND TO STAY
Case No. 3:18-cv-01364-VC

1316773

*Lisa Kim v. Tinder, Inc.*,
   No. CV 18-03093 JFW (AS), 2018 WL 6694923 (C.D. Cal. July 12, 2018) ............................ 8

*Mohamed v. Uber Techs. Inc.*,
   848 F.3d 1201 (9th Cir. 2016) ............................................................................................... 7

*Monex Deposit Co. v. Gilliam*,
   671 F. Supp. 2d 1137 (C.D. Cal. 2009) ................................................................................. 9

*Nevarez v. Forty Niners Football Co., LLC*,
   No. 16-CV-07013, 2017 WL 3492110 (N.D. Cal. Aug. 15, 2017) ........................................ 8

*Pirozzi v. Apple, Inc.*,
   966 F. Supp. 2d 909 (N.D. Cal. 2013) ................................................................................... 3

*Pryor v. Shiley, Inc.*,
   916 F.2d 716 (9th Cir. 1990) ................................................................................................. 3

*Rice v. Downs*,
   248 Cal. App. 4th 175 (2016) ........................................................................................... 2, 6

*Shaw v. Regents of Univ. of Calif.*,
   58 Cal. App. 4th 44 (1997) .................................................................................................... 7

*Swift v. Zynga Game Network, Inc.*,
   805 F. Supp. 2d 904 (N.D. Cal. 2011) ................................................................................... 9

*Tompkins v. 23andMe, Inc.*,
   840 F.3d 1016 (9th Cir. 2016) ............................................................................................... 8

*Uptown Drug Co., Inc. v. CVS Caremark Corp.*,
   962 F. Supp. 2d 1172 (N.D. Cal. 2013) ................................................................................. 8

**Other Authorities**

Restatement (Third) Of Agency § 1.01 (2006) ............................................................................. 10

iii
REPLY BRIEF IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO COMPEL INDIVIDUAL
ARBITRATION AND TO STAY
Case No. 3:18-cv-01364-VC

1316773

## I. INTRODUCTION

Plaintiffs' claims arise under the Coinbase User Agreement and Trading Rules and should be compelled to individual arbitration. In opposition, Plaintiffs attempt to argue that their claims have nothing to do with Coinbase's decision to halt trading, its alleged refusal to process transactions, or the alleged execution of orders above the quoted price. Pl.'s Opp. to Renewed Mot. to Compel Individual Arbitration and to Stay ("Opp.") at 10, Dkt. 61. But Plaintiffs cannot escape their own pleadings: the Second Amended Complaint ("SAC") alleges that it was these events that gave rise to Plaintiffs' injuries.

These alleged injuries are inextricably intertwined with Plaintiffs' and Coinbase's rights and obligations set forth in the User Agreement and the Trading Rules (which are incorporated by reference in the User Agreement). Def.'s Renewed Mot. to Compel Individual Arbitration and to Stay ("Mot.") at 9-13, Dkt. 54. Central questions in this litigation will be whether (1) Coinbase's decision to halt trading following the launch of BCH was justified and permitted under its Trading Rules; (2) whether Coinbase's Trading Rules properly and adequately protected Plaintiffs from improper trading and market manipulation; and (3) whether Plaintiffs' consent to the terms of the User Agreement and Trading Rules bars their claims for damages due to alleged "slippage" in BCH prices. *Id.*

Plaintiffs' opposition does nothing to refute the relevance of the User Agreement and Trading Rules to these claims. Plaintiffs' SAC cites and references Coinbase's Trading Rules ***eight*** separate times in support of their claims. *See, e.g.,* SAC ¶¶ 47-48 (alleging that the Trading Rules were "inadequate" to prevent volatility and unfairness), ¶ 97 (alleging that the Trading Rules allowed the company to trade its own corporate funds), and ¶¶ 186-89 (alleging that the Trading Rules were misleading in assuring users that "GDAX does not use artificial market integrity measures such as 'circuit breakers' or trading halts"). For example, Plaintiffs assert in paragraph 48 of their SAC that Coinbase was "negligent" because "its trading rules were inadequate at the time." SAC ¶ 48. Beyond the fact that the SAC's allegations directly rely on Coinbase's Trading Rules for support, Coinbase is entitled to defend itself by virtue of

1
REPLY BRIEF IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO STAY
Case No. 3:18-cv-01364-VC

1316773

Plaintiffs' agreement to those rules.  *See* Def.'s Mot. to Dismiss Seconded Amended Compl. ("MTD") at 1, 5-7, 12-15, Dkt. 55.  One of Coinbase's principal defenses in this case is that Plaintiffs' claims should be dismissed because they complain of conduct to which they previously agreed.  *See id.* at 13-14.

Plaintiffs' opposition does nothing to dispute the SAC's citation to and reliance on the Trading Rules, or that the factfinder will need to interpret those rules to adjudicate Plaintiffs' claims.  Instead, Plaintiffs take the position that because *some* allegations supporting their claims do not *directly* invoke the User Agreement or Trading Rules, their claims taken as a whole do not arise under the contract.  But the law does not require Coinbase to show that *every element* of a claim arises under the arbitration agreement to enforce the agreement.  On the contrary, the law provides that claims "encompassing" the interpretation of a contract "arise under" that contract. *Rice v. Downs*, 248 Cal. App. 4th 175, 1224 (2016).  It makes no difference whether one element of a claim or all elements of a claim require reference to the contract.

Because Plaintiffs' claims are "inextricably bound up with questions of contract interpretation, performance, and breach," they arise under the agreement and are subject to arbitration.  *Hopkins & Carley, ALC v. Thomson Elite*, No. 10-CV-05806-LHK, 2011 WL 1327359, at *6 (N.D. Cal. Apr. 6, 2011).  The Court should grant Defendants' motion to compel individual arbitration and stay Plaintiffs' claims until the arbitration is completed.

II.  **ARGUMENT**

    A.  **Plaintiffs' claims arise under the User Agreement and therefore fall within the scope of the arbitration clause.**

The central question presented by Coinbase's Motion is whether Plaintiffs' claims arise under the User Agreement.  As Coinbase explained in its opening papers, the SAC makes plain that the answer to that question is "yes."

        1.  **Plaintiffs' claims are inextricably intertwined with Plaintiffs' and Coinbase's rights and obligations set forth in the User Agreement**

Plaintiffs cannot escape their own pleading: the SAC alleges that it was Coinbase's decision to halt BCH trading, its alleged refusal to process transactions, and its alleged execution

2
REPLY BRIEF IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO STAY
Case No. 3:18-cv-01364-VC

1316773

of orders above the quoted price that gave rise to Plaintiffs' injuries. SAC ¶¶ 35, 46, 176, 177, 186-89. The "sine qua non" of Plaintiffs' causes of action is the injury alleged. *See Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1104 (9th Cir. 1986) (injury is the "sine qua non" of recovery on fraud); *Pryor v. Shiley, Inc.*, 916 F.2d 716, 2 (9th Cir. 1990) (dismissal of negligence claim appropriate in absence of injury); *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 919 (N.D. Cal. 2013) (injury is prerequisite to UCL claim). The rest—namely, Plaintiffs' lengthy speculation about imagined backroom dealings and nefarious intent—is an unfounded attempt at distracting from these central issues.

Plaintiffs' grievances, as articulated in the SAC, are expressly tied to the language in the User Agreement and incorporated Trading Rules. *See, e.g.,* SAC ¶ 48 (alleging that the Trading Rules were "inadequate" to prevent volatility and unfairness); *id*. ¶¶ 97, 118, 120 (alleging that the Trading Rules allowed the company to trade its own corporate funds); *id*. ¶¶ 187-189 (alleging that the Trading Rules were misleading in assuring users that "GDAX does not use artificial market integrity measures such as 'circuit breakers' or trading halts").

In addition, notwithstanding Plaintiffs' argument to the contrary, Coinbase's Motion to Dismiss relies heavily on the User Agreement and Trading Rules to challenge Plaintiffs' claims, demonstrating how Plaintiffs now complain of conduct to which they specifically agreed. *See* MTD at 1, 5-7, 12-15.[1] As just one example, the MTD explains that Coinbase's duties vis-à-vis Plaintiffs are governed by the User Agreement; without showing a breach of that agreement, Plaintiffs may not recover the purely economic losses they seek on their negligence claims. MTD at 12. In other words, Plaintiffs must assert a breach of contract to prevail on their negligence claims. As another example, the MTD relies on the User Agreement to defend against the claim that Coinbase was negligent in deciding to close the order book and "cancel[] 'resting orders,'" explaining that Coinbase did not warrant that its services would be

---

[1] Strangely, Plaintiffs argue that Defendants "barely make reference" to the User Agreement or the Trading Rules in the Motion to Dismiss, citing to pages 13-14 of that brief. Opp. at 12. But the cited pages in fact focus specifically and in depth on various provisions in both the User Agreement and the Trading Rules.

3
REPLY BRIEF IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO STAY
Case No. 3:18-cv-01364-VC

1316773

"continuous, uninterrupted, timely, or error-free," and that it expressly reserved the right *to cancel orders at its sole discretion*. *Id.* at 14. Resolving the merits of the SAC would thus require evaluating whether Plaintiffs may assert claims based on conduct to which they previously consented. Such questions will unquestionably require "reference to the underlying contract, interpretation of the parties' agreement, or examination of performance under the contract." *Hopkins & Carley*, 2011 WL 1327359, at *6.

Moreover, Plaintiffs' opposition itself relies on the interpretation and enforcement of the terms of the User Agreement. First, Plaintiffs argue that they were injured by some "scheme" that went beyond "ordinary slippage" or "mere slippage." Opp. at 10. Of course, as Coinbase explained in its Motion, the Trading Rules to which Plaintiffs agreed expressly permitted slippage, Mot. at 11, and, to the extent that Plaintiffs' claim is that the *type* or *extent* of the slippage went outside the bounds of the provision in the Trading Rules, the question will require interpretation of the meaning of the slippage provision. Similarly, Plaintiffs' argument that Coinbase made "false and deceptive statements" about "when and the extent to which it would support trading in BCH," Opp. at 10, requires reference to the User Agreement, which provides that Coinbase had "sole discretion" over whether to support forked assets like BCH. Pollak Decl., Ex. 12 (User Agreement). Assessing whether Plaintiffs have sufficiently alleged reliance on the allegedly "false" claims regarding BCH will therefore require consideration of the disclosure in the User Agreement that Coinbase could, at any time and for any reason, decide to support BCH.

Plaintiffs' opposition next repeats their criticism of Coinbase's provisions regarding market manipulation and improper trading, arguing that these provisions were "toothless." Opp. at 10. Put differently, Plaintiffs argue that these provisions in the Trading Rules were either defective or breached. Of course, whether these provisions were sufficiently enforced—*i.e.*, whether Coinbase performed its end of the contract—is a question of contract performance, and whether the provisions were sufficiently definite or stringent is a question of contract interpretation.

4
REPLY BRIEF IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO STAY
Case No. 3:18-cv-01364-VC

1316773

Plaintiffs' opposition also repeats the allegation from the SAC that the Trading Rules in December 2017 did *not* provide for a "fair and orderly market," SAC ¶ 48, Opp. at 11, which raises questions of contract interpretation to determine whether the December 2017 Trading Rules were deficient as Plaintiffs allege. Again, the question of whether the Trading Rules themselves contributed to or are evidence of "negligence" by Coinbase, as alleged by Plaintiffs in paragraph 48 of the SAC, requires reference to and interpretation of those rules. *Id.*

The fact that Plaintiffs have pleaded tort and statutory claims (as opposed to contract claims) does not change this conclusion. Plaintiffs spend two pages of their opposition discussing the distinction between narrow and broad arbitration provisions. Opp. at 7-8. But, even under a "narrow" interpretation, the claims at issue are within the scope of the arbitration clause.[2] Indeed, as Plaintiffs concede, claims "fall within a narrow arbitration clause where plaintiff's recovery is tied to its rights and defendants' duties under the agreement in issue." Opp. at 8. That is the case here: adjudicating Plaintiffs' claims will require a determination of whether Plaintiffs are entitled to any recovery as a result of BCH price "slippage" or a halt in trading when they consented to both through the User Agreement. In other words, assessing any entitlement to recovery is precisely a question of Plaintiffs' rights and Coinbase's duties under the User Agreement.

Moreover, California law—which governs the interpretation of the User Agreement, per its terms, *see* Pollack Decl., Ex. 12, at § 8.10—provides that, where an arbitration provision applies to "any dispute" arising under an agreement, as this one does, the language "extends

---

[2] Plaintiffs take issue with Coinbase's citation to *Gregory v. Electro-Mech. Corp.*, 83 F.3d 382 (11th Cir. 1996), asserting that Gregory "conflicts with the law in this Circuit." Opp. at 8, n. 8. Plaintiffs misunderstand the case law. As Coinbase noted in its Motion, the court in *Gregory* held that, "[w]hether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted." Mot. at 9. The Ninth Circuit's decision in *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914 (9th Cir. 2011), focused on the distinction between "broad" and "narrow" arbitration agreements, but did *not* disagree with the rule in *Gregory* cited here. To the contrary: the Ninth Circuit in fact suggested that, had the parties identified provisions in the contract that the defendant's conduct had allegedly breached, the dispute would have been arbitrable, regardless of the fact that the claims at issue were torts. *Id.* at 923-924.

5
REPLY BRIEF IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO STAY
Case No. 3:18-cv-01364-VC

1316773

beyond contract claims to encompass tort causes of action." *EFund Capital Partners v. Pless*, 150 Cal. App. 4th 1311, 1322 (2007) (internal citations omitted);[3] *see also Blue Shield of California Life & Health Ins. Co. v. Superior Court*, 192 Cal. App. 4th 727, 736 (2011).

Finally, Plaintiffs' reliance on *Leidel v. Coinbase, Inc.*, 729 F. App'x. 883 (11th Cir. 2018), is misplaced. Plaintiffs claim that the situation here is "analogous" to that in *Leidel* (Opp. at 4, 11); in fact, it could not be more different. The court in *Leidel* was considering whether Coinbase could compel nonsignatories—*who were not even Coinbase users*—to arbitration under a theory of equitable estoppel where the plaintiffs asserted claims of aiding and abetting theft. 729 F. App'x. at 886. That issue is not present in this case. Nevertheless, *Leidel* is instructive: the Eleventh Circuit reaffirmed that "a significant relationship exists between a claim and a contract" such that a claim arises under the contract "if the claim presents circumstances in which the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract." *Id*. at 887 (internal citations omitted). As Coinbase has established, Plaintiffs' claims require both reference to *and* construction of multiple provisions in the User Agreement and the incorporated Trading Rules.

### 2. The Trading Rules are incorporated into the User Agreement and apply to all of the Plaintiffs.

Plaintiffs argue that the Trading Rules were "explicitly not incorporated into the User Agreement." Opp. at 2 n.2. It is unclear on what basis Plaintiffs make this argument, given that the User Agreement expressly stated: "By signing up to use an account through coinbase.com or gdax.com, or any associated websites, APIs, or mobile applications (collectively the 'Coinbase Site'), you agree that you have read, understood, and accept all of the terms and conditions contained in this Agreement." Pollak Decl., Exs. 11-13. In other words, the Agreement encompassed every section of the document, including Part 3—which contained the following provision—"By accessing GDAX through www.gdax.com or GDAX API, you accept and agree

---

[3] Plaintiffs' citation to a string of cases (Opp. at 7 n.7) that purport to undercut *EFund* does not change this conclusion, because those cases did not deny that tort claims might arise even under narrow agreements. *See, e.g.*, *Rice,* 248 Cal. App at 1225 (agreeing that a phrase such as "any dispute" or "any controversy" potentially encompasses tort claims).

to be bound by the Trading Rules"—and included a hyperlink to the Trading Rules. Pollak Decl., Exs. 12-13. As Coinbase explained in its Motion, a contract need not expressly recite that it "incorporates" another document, so long as it "guides the reader to the incorporated document"—as this one did. *Shaw v. Regents of Univ. of Calif.*, 58 Cal. App. 4th 44, 54 (1997) (internal citations omitted). Plaintiffs have not provided any explanation or authority for why this rule should not apply here.

Plaintiffs also argue that one plaintiff—Berk—is not subject to the Trading Rules because he did not access GDAX. Opp. at 2, n. 2. This conflicts with Plaintiffs' SAC, where they allege that Berk was shown prices on GDAX that did not "accurately reflect" the trading that was occurring on the site and that differed from the prices at which his orders were filled. SAC ¶ 175. Thus, Plaintiffs' SAC concedes that Berk used GDAX to access pricing information. Accordingly, there can be no dispute that he accepted the Trading Rules under the terms of the User Agreement. *See* Pollak Decl., Ex. 12, Part 3 ¶ 2.1.

**B.     The parties clearly and unmistakably delegated questions of arbitrability.**

In *Brennan v. Opus Bank*, 796 F.3d 1125, 1130–31 (9th Cir. 2015), the Ninth Circuit held that the incorporation of AAA rules in an arbitration agreement—like the one at issue here—constitutes clear and unmistakable evidence that the contracting parties agreed to arbitrate arbitrability. Yet Plaintiffs now argue that: 1) *Brennan* does not apply to consumer contracts; and 2) they never agreed to delegation. Opp. at 5-6. They are wrong on both counts.[4]

First, as Coinbase argues in its Motion, the majority of courts applying *Brennan* has concluded that it does, in fact, apply to consumer contracts, regardless of the sophistication of the parties. *See* Mot. at 5-6. Second, Plaintiffs' argument for why they never agreed to delegation is

---

[4] Plaintiffs also argue that the severability provision in the arbitration provision undercuts the view that the parties clearly delegated gateway questions to the Arbitrator. Coinbase acknowledges that this Court agreed with that argument in its October 23 Order, but Coinbase notes its respectful disagreement with that conclusion in light of *Mohamed v. Uber Techs. Inc.*, 848 F.3d 1201 (9th Cir. 2016), where the Ninth Circuit held that a generic reference to a court was not enough to defeat the parties' clear and unmistakable delegation of gateway questions to the arbitrator.

7
REPLY BRIEF IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO STAY
Case No. 3:18-cv-01364-VC

1316773

that the delegation clause is in the AAA Consumer Arbitration Rules, which were thirty pages long and only hyperlinked in the User Agreement. Opp. at 5, n.5. But courts have consistently enforced agreements that were made available through hyperlinks. *See, e.g.*, *Nevarez v. Forty Niners Football Co., LLC*, No. 16-CV-07013, 2017 WL 3492110, at *8 (N.D. Cal. Aug. 15, 2017); *Lisa Kim v. Tinder, Inc.*, No. CV 18-03093 JFW (AS), 2018 WL 6694923, at *2-3 (C.D. Cal. July 12, 2018); *DeVries v. Experian Info. Sols., Inc.*, No. 16-CV-02953-WHO, 2017 WL 733096, at *6 (N.D. Cal. Feb. 24, 2017). Nor does the length of the AAA Rules make the agreement less enforceable. *See, e.g.*, *Han v. Samsung Telecommunications Am.*, LLC, No. CV 13-3823-GW AJWX, 2014 WL 505999, at *2 (C.D. Cal. Jan. 30, 2014) ("Plaintiffs fail to identify a case affirmatively concluding that no agreement was formed merely because the document containing an arbitration provision was too long."); *Uptown Drug Co., Inc. v. CVS Caremark Corp.*, 962 F. Supp. 2d 1172, 1182 (N.D. Cal. 2013) (enforcing agreement despite plaintiff's argument that provision "lurks unremarkably in the middle of a 217–page document").

        **C.**        **The User Agreement is not unconscionable and must be enforced.**

In their Opposition, Plaintiffs revive their previous argument that the User Agreement is unconscionable, without bothering to acknowledge or address the cases cited in Coinbase's opening brief (and briefing on the initial motion to compel arbitration) that preclude any finding of unconscionability. Once again, their argument must fail.

Plaintiffs' sole argument regarding substantive unconscionability is that the User Agreement includes a fee-shifting provision for actions to enforce the arbitration agreement. Opp. at 12. However, the Ninth Circuit has held that fee-shifting provisions in consumer agreements do not render a contract substantively unconscionable, explicitly holding "that the bilateral attorneys' fee shifting clause in [a consumer contract] is not unconscionable under California law." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1025 (9th Cir. 2016). *Tompkins* is squarely on point, and the Court's inquiry should end here. *See Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 795 (2012) ("Unconscionability requires a showing of both procedural unconscionability and substantive unconscionability.") (citing *Armendariz v. Found. Health*

8
REPLY BRIEF IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO COMPEL INDIVIDUAL
ARBITRATION AND TO STAY
Case No. 3:18-cv-01364-VC

1316773

*Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)).

Plaintiffs' argument regarding procedural unconscionability also lacks merit. Plaintiffs have not shown procedural unconscionability because, as "consumer[s] with options," they had a meaningful choice to use other exchanges or forgo digital currency trading altogether. *Baker v. Acad. Of Art Univ. Found.*, No. 17-cv-03444-JSC, 2017 WL 4418973, at *4 (N.D. Cal. Oct. 5, 2017); *Monex Deposit Co. v. Gilliam*, 671 F. Supp. 2d 1137, 1144 (C.D. Cal. 2009) (contract not procedurally unconscionable because "investors had many reasonable and realistic market alternatives to opening Monex Atlas accounts, including the option of not investing") (citation omitted). Here, because there were other digital currency exchanges available, (SAC ¶¶ 91, 96, 102, 118) and because Plaintiffs had the option to forgo trading altogether, the contract is not procedurally unconscionable.

Accordingly, Plaintiffs have failed to meet their burden to show either substantive or procedural unconscionability, let alone both.

> **D. Plaintiffs' claims against Armstrong and Farmer must be arbitrated.**

Nonsignatory officers and employees of a company—like Armstrong and Farmer—can enforce arbitration agreements against signatories under principles of agency. *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006); *Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825, 833 (N.D. Cal. 2007) (nonsignatory officers and managers of a signatory corporation could enforce an arbitration agreement against the signatory plaintiff). Plaintiffs' principal argument on this point appears to be that Armstrong and Farmer cannot enforce the User Agreement because the "clear language" of the User Agreement "specifically applies only to claims between customers and Coinbase." Opp. at 14. This argument is nonsensical because it ignores the relevant question: are the claims against Armstrong and Farmer connected to their conduct and actions as *agents* of Coinbase? If so, then Armstrong and Farmer, as agents of Coinbase, have standing to enforce the terms of arbitration agreement entered into by Coinbase. *See Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 916 (N.D. Cal. 2011). Indeed, Plaintiffs do not dispute that they bring claims against Armstrong and

9
REPLY BRIEF IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO COMPEL INDIVIDUAL
ARBITRATION AND TO STAY
Case No. 3:18-cv-01364-VC

1316773

Farmer in connection with their conduct as employees and officers of Coinbase.  And agency principles dictate that the corporation acts through its corporate officers, so references to Coinbase may be seen as references to its corporate officers.  Restatement (Third) Of Agency § 1.01 (2006) (officer acts as representative of or on behalf of corporation).

Moreover, Plaintiffs misstate the court's reasoning in *Amisil*.  Plaintiffs argue that the *Amisil* court reasoned that "it would be difficult to find that claims against a non-signatory 'arise under' an agreement to which he is not a party."  Opp. at 14.  In fact, the court was quoting the First Circuit's statement that: "[I]t is difficult to see how a lawsuit between the seller and a nonsignatory ***who is not a successor in interest to the buyer's rights*** can be said to 'arise under' the Purchase Agreement."  *Amisil,* 622 F. Supp. 2d at 834 (emphasis added).  That is unquestionably *not* the situation here where it is a party's own agent who is seeking to enforce the arbitration agreement.  Moreover, the *Amisil* court *declined* to follow the First Circuit's decision, but found that the agreement in question allowed the nonsignatory defendant officers and employees to compel arbitration against the plaintiffs.  *Id*. at 835, 839.

For the reasons above, the Court should likewise compel Plaintiffs' claims against Armstrong and Farmer to individual arbitrations and should enter a stay pending completion of those arbitrations.

## III.  CONCLUSION

In sum, the Plaintiffs claim that Coinbase improperly halted trading of BCH, causing them injury by either (a) preventing them from purchasing or selling BCH, or (b) by delaying the completion of their transactions, which resulted in market "slippage."  They claim that Coinbase's launch of BCH was designed to allow market manipulation and improper trading, in violation of these policies in the Trading Rules.  To adjudicate these claims, the factfinder will have to interpret the parties' contract to determine whether Coinbase's actions complied with the User Agreement and Trading Rules.  Accordingly, Plaintiffs' claims must be arbitrated.

|  |  |
|---|---|
| Dated: January 18, 2019 | Keker, Van Nest & Peters LLP |
|  | By: */s/ Benjamin Berkowitz* |
|  | Benjamin Berkowitz |
|  | Attorneys for Defendants<br>COINBASE, INC., BRIAN ARMSTRONG and DAVID FARMER |

11
REPLY BRIEF IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO STAY
Case No. 3:18-cv-01364-VC

1316773