KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND - # 221076
sragland@keker.com
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
ERIN E. MEYER - # 274244
emeyer@keker.com
NICHOLAS D. MARAIS - # 277846
nmarais@keker.com
SEAN M. ARENSON - # 310633
sarenson@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant
COINBASE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY BERK, WILLIAM CROWE, PREETHAM PERIASWAMI, NATHANIEL PYRON, SPENCER SOLTAU, MICHAEL SHRIBER, and NIKO YOUNTS, on behalf of themselves and all others similarly situated,<br><br>                Plaintiff,<br><br>        v.<br><br>COINBASE, INC., a Delaware Corporation d/b/a Global Digital Asset Exchange ("GDAX"), Brian Armstrong and David Farmer,<br><br>                Defendants. | Case No. 3:18-cv-01364-VC<br><br>**DEFENDANT COINBASE, INC.'S MOTION TO STAY PENDING APPEAL**<br><br>Date:          October 17, 2019<br>Time:          10:00 a.m.<br>Ctrm:          4, 17th Floor<br>Judge:         Hon. Vince Chhabria<br><br>Date Filed: March 1, 2018<br><br>Trial Date:  None set |

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................2

II.    BACKGROUND ....................................................................................................3

III.    LEGAL STANDARD.............................................................................................5

IV.    ARGUMENT .........................................................................................................6

    A.    Coinbase's appeal has a "reasonable probability" of success and raises "serious" legal questions. ..................................................................6

        1.    Coinbase has a "substantial case on the merits" regarding whether arbitrability is "clearly and unmistakably" delegated to arbitration. ...........6

        2.    Coinbase has a "reasonable probability or fair prospect" of success regarding whether Plaintiffs' claims "arise under" the arbitration agreement. .......................................................................9

    B.    Coinbase will suffer irreparable harm absent a stay. .............................................11

    C.    Plaintiffs will suffer no cognizable harm from a stay pending appeal. .................13

    D.    The public interest favors a stay. .........................................................................14

V.    CONCLUSION....................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aanderud v. Super. Ct.*,
    13 Cal. App. 5th 880 (2017) ....................................................................................................9

*Ali v. JP Morgan Chase Bank*,
    No. C 13-01184 JSW, 2014 WL 12691084 (N.D. Cal. Mar. 10, 2014) ..............................6, 11

*Am. Exp. Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013)............................................................................................................12

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)..............................................................................................................2

*Aviles v. Quik Pick Express, LLC*,
    No. CV-15-5214-MWF (AGR), 2016 WL 6902458 (C.D. Cal. Jan. 25, 2016) .................5, 14

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015) .............................................................................................7, 8

*Brown v. MHN Gov't Servs., Inc.*,
    No. C 14-1449 SI, 2014 WL 2472094 (N.D. Cal. June 3, 2014)...............................................5

*Cape Flattery Ltd. v. Titan Mar., LLC*,
    647 F.3d 914 (9th Cir. 2011) ................................................................................................10

*Cordas v. Uber Techs., Inc.*,
    228 F. Supp. 3d 985 (N.D. Cal. 2017) ....................................................................................7

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991)...............................................................................................................14

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019)..........................................................................................................7, 9

*Hopkins & Carley, ALC v. Thomson Elite*,
    No. 10-cv-05806-LHK, 2011 WL 1327359 (N.D. Cal. Apr. 6, 2011) ....................................10

*Int'l Ass'n of Machinsts & Aerospace Workers v. Aloha Airlines*,
    776 F.2d 812 (9th Cir. 1985) ................................................................................................11

*Kaltwasser v. Cingular Wireless, LLC*,
    No. C 07–00411 JF (PVT), 2010 WL 2557379 (N.D. Cal. June 21, 2010) .....................12, 13

1336155

*Leiva-Perez v. Holder*,
    640 F.3d 962 (9th Cir. 2011) ..................................................................5, 6, 8, 9

*McGhee v. N. Am. Bancard, LLC*,
    No. 17-cv-0586-AJB-KSC, 2018 U.S. Dist. LEXIS 19579 (S.D. Cal. Feb. 6,
    2018) ......................................................................................................................5, 14

*McLellan v. Fitbit, Inc.*,
    No. 3:16-cv-00036-JD, 2017 WL 4551484 (N.D. Cal. Oct. 11, 2017) ...................7

*Mohamed v. Uber Techs.*,
    115 F. Supp. 3d 1024 (N.D. Cal. 2015) ............................................................6, 8

*Mohamed v. Uber Techs. Inc.*,
    848 F.3d 1201 (9th Cir. 2016) .................................................................................8

*Morse v. Servicemaster Glob. Holdings, Inc.*,
    No. C 08-03894, 2013 WL 123610 (N.D. Cal. Jan. 8, 2013) ...................................8

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)...................................................................................................14

*Mundi v. Union Security Life Ins. Co.*,
    No. CV-F-06-1493 OWW/TAG, 2007 WL 2385069 (E.D. Cal. Aug. 17,
    2007) ......................................................................................................................13

*Nken v. Holder*,
    556 U.S. 418 (2009)....................................................................................5, 13, 14

*Oracle Am., Inc. v. Myriad Grp., A.G.*,
    724 F.3d 1069 (9th Cir. 2013) .................................................................................7

*Perez v. DirecTV Grp. Holdings, LLC*,
    No. 8:16-cv-1440-JLS-DFMx, 2017 WL 8117452 (C.D. Cal. Sept. 22, 2017) .......5

*Pokorny v. Quixtar Inc.*,
    No. 07-00201 SC, 2008 WL 1787111 (N.D. Cal. Apr. 17, 2008) ....................11, 14

*Revitch v. DirecTV, LLC*,
    No. 18-CV-01127-JCS, 2018 WL 5906077 (N.D. Cal. Nov. 9, 2018)....................5

*Richards v. Ernst & Young LLP*,
    No. C-08-04988 RMW, 2012 WL 92738 (N.D. Cal. Jan. 11, 2012)..................5, 14

*Roe v. SFBSC Mgmt., LLC*,
    No. 14-cv-03616-LB, 2015 WL 1798926 (N.D. Cal. Apr. 17, 2015) ................5, 12

1336155

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010) ....................................................................................................11

*Velasquez-Reyes v. Samsung Elecs. Am., Inc.*,
   No. ED CV 16-1953-DMG (KK), 2018 WL 6074573 (C.D. Cal. Mar. 8, 2018) ....................5

*Ward v. Estate of Goossen*,
   No. 14-CV-03510-TEH, 2014 WL 7273911 (N.D. Cal. Dec. 22, 2014) ......................5, 13, 14

*Winig v. Cingular Wireless LLC*,
   No. C06-4297 MMC, 2006 WL 3201047 (N.D. Cal. Nov. 6, 2006) ............................2, 13, 14

*Wuest v. Comcast Cable Commc'ns Mgmt., LLC*,
   No. 17-CV-04063-JSW, 2017 WL 5569819 (N.D. Cal. Nov. 20, 2017) ...........................5, 12

*Zaborowski v. MHN Gov't Servs., Inc.*,
   No. C 12-05109 SI, 2013 WL 1832638 (N.D. Cal. May 1, 2013)....................3, 5, 11, 13, 14

*Zelkind v. Flywheel Networks, Inc.*,
   No. 15-cv-03375-WHO, 2015 WL 9994623 (N.D. Cal. Oct. 16, 2015) .................................7

*Zenelaj v. Handybook Inc.*,
   82 F. Supp. 3d 968 (N.D. Cal. 2015) ....................................................................................7

**Statutes**

Federal Arbitration Act, 9 U.S.C. § 16 ........................................................................................2

1336155

## NOTICE OF MOTION AND MOTION TO STAY

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on Thursday, October 17, 2019, at 10:00 a.m., or as soon as the matter may be heard before the Honorable Vince Chhabria in Courtroom 4 of the United States District Court for the Northern District of California in the San Francisco Courthouse, Seventeenth Floor, 450 Golden Gate Avenue, San Francisco, California, Defendant Coinbase, Inc. ("Coinbase") will and does move this Court for an order granting its Motion to Stay Pending Appeal.[1]

Coinbase moves the Court to stay all proceedings in the district court pending appeal of the Court's August 6, 2019 Order Denying Motion to Compel Arbitration (ECF. No. 75). Coinbase's motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, all pleadings and papers on file in this action, and such other argument and evidence as may be presented to this Court prior to or at the hearing on this matter.

Dated:  August 12, 2019                                    KEKER, VAN NEST & PETERS LLP

By:  _/s/ Steven P. Ragland_
      Steven P. Ragland

      Attorneys for Defendant
      COINBASE, INC.

---

[1] This motion is calendared for the earliest hearing date on the Court's motion calendar on which counsel for both plaintiffs and defendants are available. Coinbase would welcome an advancement and/or special-setting of the hearing date in order to most expeditiously resolve the motion, and intends to address this issue at the August 21, 2019 case management conference and in conjunction with the joint statement to be filed in advance of that conference.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

As the Court acknowledged both at the April 25, 2019 argument on Defendants' motion to compel arbitration and in its August 2019 Order,[2] this case presents complicated issues regarding arbitrability, and "close calls" regarding whether or not to send the case to arbitration. The Defendants have appealed the Court's denial of their motion to compel arbitration and believe the Ninth Circuit is likely to have a different view both as to whether the contract at issue here clearly and unmistakably delegates arbitrability to the arbitrator, and whether Plaintiffs' claims—especially the sole remaining negligence count—arise under the arbitration clause here.

Allowing district court proceedings to continue while this appeal is pending would deprive Coinbase of the "efficient, streamlined" arbitration process to which the parties agreed to refer their disputes.  *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). Moreover, Coinbase would be irreparably harmed if the Ninth Circuit ultimately grants the appeal but is meanwhile forced to continue litigating here.[3]  Coinbase, therefore, respectfully requests that this Court stay all proceedings in this Court pending Defendants' appeal of the August 2019 Order.[4]

Plaintiffs will not be injured from a stay (much less "substantially injure[d]" as the caselaw requires), as any theoretical injury to Plaintiffs from a stay "can be redressed by an award of damages if plaintiff ultimately prevails."  *Winig v. Cingular Wireless LLC*, No. C06-4297 MMC, 2006 WL 3201047, at *2 (N.D. Cal. Nov. 6, 2006).  Indeed, "[a]lthough relief may be delayed, this case is still in its earliest stages, relief through the court system often takes a

---

[2] August 6, 2019 Order Denying Motion to Compel Arbitration; Granting in Part and Denying in Part Motion to Dismiss (ECF No. 75).

[3] Because the Court's August 2019 Order dismissed with prejudice all counts that had been pled against Brian Armstrong and David Farmer (Counts III-VIII, *see* Second Amended Class Action Complaint (ECF No. 51) at 43–50), Messrs. Armstrong and Farmer are no longer parties to this case and this motion is brought only on behalf of Coinbase.  Should the Court require anything from Messrs. Armstrong or Farmer in conjunction with this Motion, they will be pleased to address it or join in Coinbase's motion as needed.

[4] Pursuant to Section 16 of the Federal Arbitration Act, 9 U.S.C. § 16, Defendants appeal only that portion of the August 2019 Order pertaining to the arbitrability of Plaintiffs' claims.

long time, and the delay may be mitigated by remedies such as prejudgment interest."

*Zaborowski v. MHN Gov't Servs., Inc.*, No. C 12-05109 SI, 2013 WL 1832638, at *3 (N.D. Cal.

May 1, 2013).  For these reasons, as discussed more fully below, district courts in California

regularly grant stays pending the appeal of an order denying a motion to compel arbitration,

especially in cases such as this where the question on appeal is a "close" one, the case is in an

early stage, and the balance of hardships tips sharply in favor of a stay.

Coinbase, therefore, asks for a stay of all proceedings, including discovery, pending

appeal.

## II.    BACKGROUND

Plaintiffs Jeffrey Berk, Spencer Soltau, Michael Shriber, William Crowe, Nathaniel

Pyron, Niko Younts, and Preetham Periaswami ("Plaintiffs") each agreed to the Coinbase User

Agreement ("User Agreement").  *See* Decl. of Jesse Pollak ISO Renewed Mot. to Compel Indiv.

Arb. (ECF No. 54-1) ("Pollak Decl.") Exs. 4–10.  The User Agreement provides, in a section

titled "Arbitration; Waiver of Class Action," that "any dispute arising under [the User

Agreement] shall be finally settled … on an individual basis in accordance with the American

Arbitration Association's rules for arbitration of consumer-related disputes," and that the parties

to the agreement "expressly waive trial by jury" and their "right to participate in a class action

lawsuit or class-wide arbitration."  Pollak Decl. Ex. 13, pt. 1 ¶ 7.2; *id.*, Ex. 12, pt. 1 ¶ 7.2; *id.* Ex.

11, pt. 1 ¶ 7.2; *see also* Defs.' Renewed Mot. to Compel Indiv. Arb. & to Stay at 1–3 (ECF No.

54) ("Defs.' Mot. to Compel").

On March 1, 2018, Plaintiff Berk filed the original Class Action Complaint in this action

against Defendants Coinbase, Brian Armstrong, and David Farmer (collectively, "Defendants").

(ECF No. 1).  On April 25, 2018, Defendants moved to compel arbitration of Berk's claims.

(ECF No. 17).  On October 23, 2018, this Court issued an order denying Defendants' motion to

compel, finding that (1) the User Agreement "does not 'clearly and unmistakably' delegate

arbitrability to the arbitrator," and (2) Berk's claims did "not 'aris[e] under' the Agreement."

Order Denying Mot. to Compel & Granting Mot. to Dismiss ("October 2018 Order") (ECF No.

48) at 2–3 (citation omitted).  The Court also granted Defendants' motion to dismiss all of Berk's claims, and made its order denying the motion to compel "without prejudice to [Defendants] renewing the motion if Berk's next iteration of claims relates directly to the parties' contractual relationship."  *Id.* at 3.

On November 20, 2018, Berk and several new Plaintiffs filed a Second Amended Class Action Complaint ("SAC").  (ECF No. 51).  On December 20, 2018, Defendants filed their Renewed Motion to Compel Individual Arbitration and to Stay.  (ECF No. 54).  Defendants argued that (1) Plaintiffs and Coinbase each consented to final and binding individual arbitration by agreeing to the User Agreement; (2) the User Agreement is presumptively valid and enforceable; (3) the User Agreement delegates to an arbitrator the "gateway" questions about the existence of an arbitration agreement and the scope of that agreement; and (4) Plaintiffs' claims in the SAC fall within the scope of the parties' arbitration agreement.  *See* Defs.' Mot. to Compel at 5–13.

On April 25, 2019, the Court held oral argument on Defendants' renewed motion to compel.  At the outset, the Court commented that "the arbitration question is a difficult question," Tr. 44:10–11 (ECF No. 67), and then repeatedly characterized the issue as "a close question."  Tr. 44:16–18; 50:17–18; 53:15–16.

On August 6, 2019, the Court issued an order denying Defendants' renewed motion to compel.  (August 2019 Order, ECF No. 75).  The Order began by characterizing the issue of whether the User Agreement "clearly and unmistakably delegate[s] the question of arbitrability to the arbitrator" as "a close one."  *Id.* at 1.  Referring to the reasoning in its October 2018 Order, the Court concluded that the threshold issue of arbitrability was not "clearly and unmistakably" delegated.  *Id.*  The Court also found that Plaintiffs' claims did not "arise under" the User Agreement, although it observed that, as to the negligence claim, the question was a "closer one."  *Id.* 1–2.  The August 2019 Order also ruled on Defendants' motion to dismiss, dismissing with prejudice Plaintiffs' fraud and UCL claims and their seller-side negligence claim, and

declining to dismiss only the buyer-side negligence claim. *See id.* 2–8.[5]

## III.   LEGAL STANDARD

In determining whether to grant a stay pending appeal of the denial of a motion to compel arbitration, district courts consider: (1) whether the movant has shown a sufficient likelihood of success on the merits of the appeal; (2) whether the movant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) whether the public interest favors a stay. *See Nken v. Holder*, 556 U.S. 418, 426 (2009); *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011); *see also, e.g.*, *Roe v. SFBSC Mgmt., LLC*, No. 14-cv-03616-LB, 2015 WL 1798926, at *1-2 (N.D. Cal. Apr. 17, 2015) (applying *Nken* and *Leiva-Perez* four-factor test); *Brown v. MHN Gov't Servs., Inc*., No. C 14-1449 SI, 2014 WL 2472094, at *2 (N.D. Cal. June 3, 2014) (same).  The Ninth Circuit looks at these factors on a "continuum."  *Leiva-Perez*, 640 F.3d at 964.

District courts in California regularly exercise their discretion to grant complete stays of all proceedings pending appeal of an order denying a motion to compel arbitration. *See, e.g.*, *Revitch v. DirecTV, LLC*, No. 18-CV-01127-JCS, 2018 WL 5906077, at *2 (N.D. Cal. Nov. 9, 2018), *Wuest v. Comcast Cable Commc'ns Mgmt., LLC*, No. 17-CV-04063-JSW, 2017 WL 5569819, at *2 (N.D. Cal. Nov. 20, 2017); *Ward v. Estate of Goossen*, No. 14-CV-03510-TEH, 2014 WL 7273911, at *5 (N.D. Cal. Dec. 22, 2014); *Zaborowski*, 2013 WL 1832638, at *3; *Richards v. Ernst & Young LLP*, No. C-08-04988 RMW, 2012 WL 92738, at *5 (N.D. Cal. Jan. 11, 2012); *Velasquez-Reyes v. Samsung Elecs. Am., Inc.*, No. ED CV 16-1953-DMG (KK), 2018 WL 6074573, at *3 (C.D. Cal. Mar. 8, 2018); *Perez v. DirecTV Grp. Holdings, LLC*, No. 8:16-cv-1440-JLS-DFMx, 2017 WL 8117452, at *3 (C.D. Cal. Sept. 22, 2017); *Aviles v. Quik Pick Express, LLC*, No. CV-15-5214-MWF (AGR), 2016 WL 6902458, at *4 (C.D. Cal. Jan. 25, 2016); *McGhee v. N. Am. Bancard*, LLC, No. 17-cv-0586-AJB-KSC, 2018 U.S. Dist. LEXIS 19579, at *8 (S.D. Cal. Feb. 6, 2018).  Federal courts in California also sometimes permit limited

---

[5] Because Plaintiffs' sole surviving claim—a portion of "Count II: Negligence Against Coinbase," SAC p.41— is pleaded against only Coinbase, the August 2019 Order necessarily resulted in the dismissal of Defendants Armstrong and Farmer from this case.

discovery to proceed during a stay pending appeal, restricting discovery to that which would be available to the parties in the relevant arbitral forum. *See, e.g.*, *Mohamed v. Uber Techs.*, 115 F. Supp. 3d 1024, 1029 (N.D. Cal. 2015); *Ali v. JP Morgan Chase Bank*, No. C 13-01184 JSW, 2014 WL 12691084, at *2 (N.D. Cal. Mar. 10, 2014).

## IV.   ARGUMENT

All four factors that the Court should consider in evaluating this motion weigh in favor of a complete stay here.  As explained further below, (1) Coinbase's appeal has a sufficient likelihood of success on the merits; (2) Coinbase will be irreparably injured absent a stay, (3) Plaintiffs will not be substantially injured by a stay; and (4) a stay is in the public interest. *See Ali*, 2014 WL 12691084 at *1–2.

### A.   Coinbase's appeal has a "reasonable probability" of success and raises "serious" legal questions.

To obtain a stay, a movant need only demonstrate a "minimum quantum of likely success"—that is, that its appeal has a "'reasonable probability' or 'fair prospect'" of success, presents "a substantial case on the merits," or raises "serious" legal questions. *Leiva-Perez*, 640 F.3d at 967–68; *see also Ali*, 2014 WL 12691084, at *1.  The Ninth Circuit has called each of these formulations "essentially interchangeable," and emphasized that "none of them demand a showing that success is more likely than not." *Leiva-Perez*, 640 F.3d at 967–68.  Coinbase's appeal meets this test with respect to both issues presented in the appeal: (1) whether the User Agreement "clearly and unmistakably" delegates the issue of arbitrability to the arbitrator; and (2) whether Plaintiffs' claims "arise under" the User Agreement.

### 1.   Coinbase has a "substantial case on the merits" regarding whether arbitrability is "clearly and unmistakably" delegated to arbitration.

At the beginning of its August 2019 Order, the Court observed that the issue of whether the User Agreement "clearly and unmistakably" delegates arbitrability to the arbitrator "is a close one."  August 2019 Order at 1.  In light of this, Coinbase's appeal, at a minimum, presents a "substantial case on the merits" and "serious" legal questions. *Leiva-Perez*, 640 F.3d at 967–68.  Indeed, this appeal raises at least one matter of first impression for the Ninth Circuit on a

key issue for which there is disagreement among the district courts: whether or not delegation of arbitrability should be analyzed differently in commercial and consumer contracts.

Delegation clauses are enforceable when they "clearly and unmistakably delegate[] arbitrability questions to the arbitrator." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130–32 (9th Cir. 2015); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019); *Oracle Am., Inc. v. Myriad Grp., A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013).  Coinbase believes the User Agreement at issue here meets this standard by incorporating the AAA Consumer Arbitration Rules.  *See* Pollak Decl. Ex. 13, pt. 1 ¶ 7.2; *id.*, Ex. 12, pt. 1 ¶ 7.2; *id.* Ex. 11, pt. 1 ¶ 7.2.[6]  In its October 2018 Order, the Court observed that "[a]lthough incorporation of the AAA rules is sufficient to show that sophisticated parties intend to delegate arbitrability in a commercial contract, … that rule does not necessarily have the same force when applied to consumer contracts."  October 2018 Order at 2 (citation omitted) (citing *Brennan*, 796 F.3d 1125).  But other courts in this district and elsewhere within the Ninth Circuit have repeatedly determined that the "greater weight of authority has concluded that the holding of [*Brennan*] applies similarly to non-sophisticated parties," including in consumer cases.  *McLellan v. Fitbit, Inc.,* No. 3:16-cv-00036-JD, 2017 WL 4551484, at *2 (N.D. Cal. Oct. 11, 2017) (quoting *Miller v. Time Warner Cable Inc.*, No. 8:16-cv-00329-CAS, 2016 WL 7471302, at *5 (C.D. Cal. Dec. 27, 2016)); *see also Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 992 (N.D. Cal. 2017) ("the clear weight of authority supports the conclusion" that *Brennan* applies to consumer contracts); *Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 973–75 (N.D. Cal. 2015) ("nearly every subsequent decision in the Northern District of California . . . has consistently found effective delegation of arbitrability regardless of the sophistication of the parties"); *Zelkind v. Flywheel Networks, Inc.*, No. 15-cv-03375-WHO, 2015 WL 9994623, at *3 (N.D. Cal. Oct. 16, 2015) (applying *Brennan* to find "clear and unmistakable evidence" of the parties' intent to

---

[6] The AAA Consumer Arbitration Rules provide that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  AAA Consumer Arbitration Rules at R-14(a).

delegate based on incorporation of AAA and JAMS rules in an employee's employment contract).

Thus, Coinbase has at least a "reasonable probability or fair prospect" of success on this issue. *Leiva-Perez*, 640 F.3d at 971. Moreover, because the Ninth Circuit has expressly reserved the question of whether "incorporation of the AAA rules constitutes 'clear and unmistakable' evidence of the [parties' intent]" when applied "to unsophisticated parties or to consumer contracts," *Brennan*, 796 F.3d at 1130, this appeal "raises [a] genuine matter[] of first impression within the Ninth Circuit," which paradigmatically qualifies it as a "substantial case" warranting a stay. *Morse v. Servicemaster Glob. Holdings, Inc.*, No. C 08-03894, 2013 WL 123610, at *3 (N.D. Cal. Jan. 8, 2013); *see also Mohamed*, 115 F. Supp. 3d at 1031 ("Even though the Court finds [the possibility of movant succeeding on appeal] to be remote . . . the fact that one legal issue of first impression will have such a substantial impact on [movant's] appeal in this case militates in favor of staying this action.").

The October 2018 Order also found that the User Agreement's reference to "a court" in its severability provision precluded a "clear and unmistakable" delegation of arbitrability. October 2018 Order at 1–2. On this issue, too, Coinbase's appeal presents a "substantial" case and raises a "serious" legal question, particularly considering recent Ninth Circuit and California appellate authority. The severability language in question states that "if a court decides that any provision of this section 7.2 is invalid or unenforceable, that provision shall be severed and the other parts of this section 7.2 shall still apply." Pollak Decl. Ex. 13, pt. 1 ¶ 7.2; *id.*, Ex. 12, pt. 1 ¶ 7.2; *id.* Ex. 11, pt. 1 ¶ 7.2. In *Mohamed v. Uber Techs. Inc.*, 848 F.3d 1201 (9th Cir. 2016), the Ninth Circuit held that a reference to the "exclusive jurisdiction" of state and federal courts in California over "any disputes" arising out of the contract was not enough to defeat the parties' clear and unmistakable delegation of gateway questions to the arbitrator. *Id.* at 1209. *Mohamed* strongly suggests the same outcome here: the generic severability clause that protects the arbitration provision in the event that a court finds some portion of it to be invalid or unenforceable does not negate the delegation clause contained within the AAA Rules.

The California Court of Appeal's decision in *Aanderud v. Super. Ct.*, 13 Cal. App. 5th 880 (2017) suggests the same outcome. *Aanderud* held that a severability clause's reference to a court does not preclude delegation where the arbitration agreement provided for the possibility that a court might be asked to review and interpret the agreement. *Id.* at 894. Here, the AAA Consumer Rules state that "[i]f a party's claim is within the jurisdiction of a small claims court, either party may choose to take the claim to that court instead of arbitration." AAA Consumer Arbitration Rules at R-9. Thus, the AAA Rules provide for certain circumstances in which a court might be asked to review and interpret the User Agreement. Coinbase believes that, just as in *Aanderud*, this fact does not limit the effectiveness of the delegation clause. In light of these recent authorities, Coinbase's appeal on this issue raises "substantial" or "serious" legal issues sufficient to warrant a stay. *Leiva-Perez*, 640 F.3d at 967–68.

### 2. Coinbase has a "reasonable probability or fair prospect" of success regarding whether Plaintiffs' claims "arise under" the arbitration agreement.

Coinbase respectfully disagrees with the Court's conclusion that Plaintiffs' claims do not "arise under" the User Agreement, *see* August 2019 Order at 1–2, and contends that its appeal has a "reasonable probability or fair prospect" of success on this issue. Nevertheless, if Coinbase succeeds on its appeal of the Court's ruling regarding delegation, neither this Court nor the Ninth Circuit would even reach the question of arbitrability. Accordingly, the Court should issue a stay pending appeal even if it disagrees that Coinbase has at least a "minimum quantum of likely success" on this issue. *See Henry Schein*, 139 S. Ct. at 529 ("When the parties' contract delegates the arbitrability question to an arbitrator, . . . a court possesses no power to decide the arbitrability issue[,] . . . even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.").

Even so, Coinbase does have a "reasonable probability or fair prospect" of prevailing on its interpretation that the claims here arise under the arbitration agreement. When a plaintiff's claims require "reference to the underlying contract, interpretation of the parties' agreement, or examination of performance under the contract," the claims "arise [under]" the contract and the

court must compel arbitration. *Hopkins & Carley, ALC v. Thomson Elite*, No. 10-cv-05806-LHK, 2011 WL 1327359, at *6-7 (N.D. Cal. Apr. 6, 2011) (citing *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292 (9th Cir. 1994)). This is true regardless of whether the claims are based upon alleged statutory violations, tortious conduct, or breaches of contract. *See, e.g.*, *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 923–24 (9th Cir. 2011). Moreover, any doubts must be resolved in favor of arbitration. *Hopkins*, 2011 WL 1327359, at *7.

Here, Plaintiffs allege that it was Coinbase's decision to halt trading, its alleged refusal to process transactions, and its alleged execution of orders above the quoted price that gave rise to their injuries. *See* SAC ¶¶ 35, 46, 176, 177, 186–89. These allegations are expressly tied to the language in the User Agreement and the incorporated Trading Rules. *See, e.g.*, SAC ¶ 48 (alleging that the Trading Rules were "inadequate" to prevent volatility and unfairness); *id.* ¶¶ 97, 118, 120 (alleging that the Trading Rules allowed the company to trade its own corporate funds); *id.* ¶¶ 187–189 (alleging that the Trading Rules were misleading in assuring users that "GDAX does not use artificial market integrity measures such as 'circuit breakers' or trading halts"). Plaintiffs' claims are thus "inextricably bound up with questions of contract interpretation, performance, and breach," and resolving them will inevitably require "reference to the underlying contract, interpretation of the parties' agreement, or examination of performance under the contract." *Hopkins*, 2011 WL 1327359, at *6.

Moreover, on the single negligence claim that remains in this case following the Court's August 2019 Order, the Court found that arbitrability "presents a closer question" than that presented by the now-dismissed counts. Indeed, the negligence claim brought by buyer-side Plaintiffs is premised on an injury caused by "slippage," SAC ¶ 37, a term used in and defined by the Trading Rules, which not only are incorporated by reference into the User Agreement, but also expressly permit "slippage." *See* Pollak Decl., Ex. 14 ¶ 1.12 (ECF No. 54-15). In the August 2019 Order on Coinbase's motion to dismiss, the Court itself made a determination that the use of the term "slippage" in the Trading Rules was not intended to reach the type of "slippage" alleged by Plaintiffs. August 2019 Order at 5. Coinbase will argue to the Ninth

Circuit that this Court's own interpretation of the contract language at the motion-to-dismiss stage illustrates how the negligence claim, at a minimum, is inextricably bound up with the User Agreement and Trading Rules.

Accordingly, Coinbase's appeal has a "reasonable probability or fair prospect" of success on the question of arbitrability under the User Agreement.

### B. Coinbase will suffer irreparable harm absent a stay.

If this litigation continues while Coinbase's appeal is pending, Coinbase will face serious and irreparable harm that far outweighs any theoretical injury to Plaintiffs or putative class members. The predominant purpose of arbitration is to provide an "inexpensive and expeditious means of resolving . . . dispute[s]." *Int'l Ass'n of Machinsts & Aerospace Workers v. Aloha Airlines*, 776 F.2d 812, 815 (9th Cir. 1985); *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010) (noting "the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes"). Yet if this Court denies a stay, and the Ninth Circuit reverses the August 2019 Order and compels arbitration, the substantial time and resources that Coinbase will have devoted to litigating this dispute during the appeal can never be recovered. *See Pokorny v. Quixtar Inc.*, No. 07-00201 SC, 2008 WL 1787111, at *2 (N.D. Cal. Apr. 17, 2008). While monetary expenses incurred in litigation are generally not considered irreparable harm, "arbitration is unique in this aspect," because "[i]f a party must undergo the expense of a trial before being able to appeal denial of a motion to compel arbitration, the anticipated advantages of arbitration—speed and economy—are lost." *Zaborowski*, 2013 WL 1832638, at *2; *see also Pokorny*, 2008 WL 1787111, at *2.

Simply put, ongoing litigation would render meaningless Coinbase's right to seek immediate appellate review from an order denying a motion to compel arbitration. Numerous district courts within the Ninth Circuit have adopted this reasoning and granted stay motions under similar circumstances because the consequence of losing the advantages of arbitration are "serious, perhaps, irreparable." *Ali*, 2014 WL 12691084, at *1; *see also, e.g., Zaborowski*, 2013

WL 1832638, at *2; *Wuest v. Comcast Cable Commc'ns Mgmt., LLC*, No. 17-04063, 2017 WL 5569819, at *1 (N.D. Cal. Nov. 20, 2017).  For example, the AAA Consumer Arbitration Rules incorporated into the User Agreement provide that parties do not have the right to file written motions (including discovery motions and dispositive motions) without specific prior permission from the arbitrator.  AAA Consumer Arbitration Rules at R-24, R-33.

Indeed, the harm caused by denial of a stay would be magnified because "[t]he burdens associated with discovery in a putative class action are substantially greater than in an individual arbitration."  *SFBSC Mgmt.*, 2015 WL 1798926, at *3; *see also Wuest*, 2017 WL 5569819, at *1 (irreparable harm absent a stay was amplified because "Plaintiff has brought this case as a class action, thus increasing the expense Defendants will incur"); *Kaltwasser v. Cingular Wireless, LLC*, No. C 07–00411 JF (PVT), 2010 WL 2557379, *2 (N.D. Cal. June 21, 2010) ("[T]he nature and extent of discovery permissible in private arbitration is fundamentally different from that allowed in class-action litigation."); *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 238-239 (2013) (comparing the "prospect of speedy resolution that arbitration in general and bilateral arbitration in particular was meant to secure" with class procedures that are "slower, more costly, and more likely to generate procedural morass").

Even aside from class-related discovery concerns, the AAA Consumer Arbitration Rules incorporated into the User Agreement here provide for a much more limited "exchange of information between the parties" than would occur in discovery under the Rules of Civil Procedure.  As the relevant AAA Rules emphasize: "keeping in mind that arbitration must remain a fast and economical process," the arbitrator has discretion to "direct (1) specific documents and other information to be shared between the consumer and business, and (2) that the consumer and business identify the witnesses, if any, they plan to have testify at the hearing."  AAA Consumer Arbitration Rules at R-22(a).  Beyond that, "[n]o other exchange of information . . . is contemplated under these Rules, unless an arbitrator determines further information exchange is needed to provide for a fundamentally fair process."  *Id.* at R-22(c).  Thus, in this case, further discovery in this Court during the pendency of Coinbase's appeal would irreparably

deprive Coinbase of the benefits of the very specific limitations on discovery to that which, *in the arbitrator's discretion*, is consistent with "a fast and economical process." *Id.* at R-22(a); *see Ward*, 2014 WL 7273911, at *4 (finding irreparable harm to the movant where the relevant arbitration procedure "is a streamlined process" without "formal discovery, law and motion practice, or other pre-trial hearings" because "[t]he contrast, in time and expense, between the arbitration process . . . and the process of litigation in federal court is substantial").

Because Coinbase will be "irreparably injured absent a stay," this factor strongly supports granting this motion. *Nken*, 556 U.S. at 426.

### C. Plaintiffs will suffer no cognizable harm from a stay pending appeal.

In contrast to the substantial irreparable harm that Coinbase will face if a stay is not granted, the only harm that Plaintiffs could suffer is a delay in prosecuting their claims. But any such delay "does not compare to the unjustifiable waste of time and money that would result from proceeding with this litigation before the Ninth Circuit decides whether this dispute is even subject to judicial resolution." *Mundi v. Union Security Life Ins. Co.*, No. CV-F-06-1493 OWW/TAG, 2007 WL 2385069, at *6 (E.D. Cal. Aug. 17, 2007). As one court in this district has explained, "[a]lthough relief may be delayed, this case is still in its earliest stages, relief through the court system often takes a long time, and the delay may be mitigated by remedies such as prejudgment interest." *Zaborowski*, 2013 WL 1832638, at *3. Indeed, as another Northern District court has emphasized, any injury to a plaintiff from a stay such as that requested here "can be redressed by an award of damages if plaintiff ultimately prevails." *Winig*, 2006 WL 3201047, at *2.

Additionally, a stay will not prejudice Plaintiffs' ability to develop their case and pursue permissible discovery in the appropriate forum, as the parties "have taken responsible and proportionate steps to preserve evidence, including electronic data, that are relevant to the issues reasonably evident in this action." Joint Report of Rule 26(f) Conference and Discovery Plan (ECF No. 40) at 3.

Therefore, this factor likewise favors granting Coinbase's motion because the issuance of

a stay will not "substantially injure the other parties interested in the proceeding." *Nken*, 556 U.S. at 426.

> ### D.   The public interest favors a stay.

Public policy interests—particularly the promotion of judicial economy and the strong federal policy favoring arbitration—also support a stay. *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "It does not make sense for this Court to expend its time and energy preparing this case for trial . . . only to learn at a later date from the court of appeals that it was not the proper forum to hear the case." *Aviles*, 2016 WL 6902458, at *4. As courts have repeatedly emphasized, "[t]he policy underlying the FAA is to promote judicial efficiency and economy. Thus, contrary to public policy, judicial resources will be wasted if this case proceeds all the way to trial, only for the Court to later discovery the case should have proceeded through arbitration." *Ward*, 2014 WL 7273911, at *5; *McGhee*, 2018 U.S. Dist. LEXIS 19579 at *8 (same); *Zaborowski*, 2013 WL 1832638, at *3 ("[C]ontrary to public policy, judicial resources will be wasted if this case proceeds all the way to trial, only for the Court to later discover that the case should have proceeded through arbitration."); *Richards,* 2012 WL 92738, at *4 ("[T]he federal policy favoring arbitration embodied in the FAA and the economical use of judicial resources lead the public interest to favor a stay."). Moreover, "[the] speed and efficiency of [arbitration] are the foundation for a strong federal policy favoring arbitration over litigation, which would be contravened by requiring the parties to litigate while the appeal is pending." *Pokorny*, 2008 WL 1787111, at *2 (internal quotation marks and citations omitted).

On the other hand, the requested stay will not materially impact Plaintiffs' interest in resolving their dispute against Coinbase. *See Winig*, 2006 WL 3201047, at *3 ("Although the Court is cognizant of the public interest in vindicating consumer rights, the Court finds the requested stay will not materially impact that interest.") (internal quotation marks and citations omitted); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) ("[B]y agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by

the statute; it only submits to their resolution in an arbitral, rather than judicial, forum.")
(citations omitted).

## V.     CONCLUSION

For the foregoing reasons, Coinbase respectfully requests that the Court grant its motion
and stay all proceedings until the conclusion of the pending appeal.


Dated:  August 12, 2019                        KEKER, VAN NEST & PETERS LLP

                                    By:    */s/ Steven P. Ragland*
                                          STEVEN P. RAGLAND

                                          Attorneys for Defendant
                                          COINBASE, INC.

DEFENDANT COINBASE, INC.'S MOTION TO STAY PENDING APPEAL
Case No. 3:18-cv-01364-VC

1336155