July 1, 2020

**By ECF**

Hon. Vince Chhabria
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

        Re:  *Berk, et al. v. Coinbase, Inc.*, Case No. 3:18-cv-01364-VC

Dear Judge Chhabria:

      The parties submit this joint letter pursuant to the Minute Entry filed on June 24, 2020 (Dkt. No. 90) and the Local Civil Rule ¶ 22 regarding discovery disputes. As indicated in the Joint Case Management Statement (Dkt. No. 88) and during the Case Management Conference held on June 24, 2020, the parties disagree as to whether certain documents described below should be produced in light of the Court's order dated August 21, 2019 (Dkt. No. 82) (the "Discovery Order"), which limits discovery to "issues/material that would be used in arbitration proceedings."

Plaintiffs' Position

The Court's initial impression was correct—the documents requested are both relevant to the claims asserted herein and necessary to enable Plaintiffs to address Coinbase, Inc.'s ("Coinbase") anticipated defenses.   Under Federal Rule of Civil Procedure 26, a party may obtain discovery that is relevant to any party's claim or defense and proportional to the needs of the case. *See also QC Labs v. Green Leaf Lab, LLC*, 8:18-cv-01451-JVS, 2019 U.S. Dist. LEXIS 217419, at *9 (C.D. Cal. July 19, 2019).  The limited requests at issue here fulfill this standard.

They also satisfy the Discovery Order as they are limited to issues and material that would be used in an arbitration.  The American Arbitration Association's ("AAA") Consumer Arbitration Rules contemplate the exchange of information by the parties so that the arbitration results in a "fundamentally fair process".  The Consumer Due Process Protocol Statement of Principles (the "Protocol"), found on the AAA website, Protocol Principle 2, specifically states that "[n]o party should be denied the right to a fundamentally-fair process due to an inability to obtain information material to a dispute."  *See also Jacovides v. Future Foam, Inc.*, 2:16-cv-01842, 2016 U.S. Dist. LEXIS 57530, at *27 (C.D. Cal. April 25, 2016)(explaining that the desire for simplicity in an arbitration must be balanced with the plaintiffs need for discovery to prove his claim).

1386619

Letter to Hon. Vince Chhabria
July 1, 2020
Page 2

The limited requests, pared down after repeated meet and confer conferences and correspondence (and the designated document request to which they relate) are as follows:[1]

(1) The documents which defendants reviewed or upon which they relied in determining to proceed with the launch ("Launch") of bitcoin cash ("BCH") when they did, including any document upon which defendants relied in determining that Coinbase was technologically capable of handling the Launch. (Request No. 17).

(2) The documents upon which defendants relied in determining to halt trading of BCH on December 19, 2017. (Request No. 17).

(3) Communications with employees regarding Coinbase's determination to provide full support for the trading of BCH. (Request No. 18).[2]

(4) Communications with the Chicago Mercantile Exchange ("CME") concerning its launch of Bitcoin futures contracts. (Request No. 19).

(5) The documents reviewed in connection with the internal investigation of the Launch. (Request No. 20).

They are both relevant and necessary to enable Plaintiffs to prove their claims and test Coinbase's anticipated defenses.[3]

Plaintiffs will have to prove the following four elements of negligence: duty, breach, causation and injury. *Berk v. Coinbase*, 18-cv-01364-VC, 2019 U.S. Dist. LEXIS 133939, *3 (N.D. Cal. Aug. 6, 2019). More specifically, Plaintiffs will have to prove that Coinbase failed to follow its own criteria set forth in its December 19, 2017 email and the Digital Asset Framework, which it had previously circulated regarding when it would add full support for a new currency. In order to be able to prove that claim and Coinbase's negligence, Plaintiffs will need to know and understand the basis upon which Coinbase determined to suddenly launch full support for BCH on December 19, 2017, and whether it took sufficient steps, in accordance with its duty of reasonable care, before it announced full trading in BCH (Request No. 1). The documents should also demonstrate whether the halt was necessary because Coinbase could not handle the amount of trading that took place, and thus whether Coinbase was technologically incapable of handling the Launch (Request No. 2). These documents should reveal why Coinbase felt compelled to suddenly proceed with the Launch (in conflict with its prior statements) when it was incapable of handling it, including whether it did so because of the CME's launch of its bitcoin futures contracts (Request No. 4), which the Court noted was relevant to Coinbase's negligence, and why Coinbase disclosed its plans to its own employees on November 13, 2017, but failed to make those disclosures to its customers, who could then take steps to prepare for the Launch. (Request No. 3). Documents responsive to Request No. 3 will also indicate when

---

[1] To date, despite having served two requests for documents and two sets of interrogatories, Plaintiffs have only received 153 pages of documents, a significant portion of which pertain to their own accounts and trading and publicly available documents, and minimal information pursuant to the interrogatories.

[2] Only the November 13, 2017 announcement to employees was produced.

[3] Coinbase faults Plaintiffs for not identifying specific documents or custodians—information that is only in Coinbase's possession. The AAA Rules, however, do not apply here. In any event, Plaintiffs will be glad to work with Coinbase on this and any privilege issues. Plaintiffs do not accept Coinbase's offer regarding request no. 1, but are willing to work with Coinbase on this request.

1386619

Letter to Hon. Vince Chhabria
July 1, 2020
Page 3

Coinbase determined to take steps to proceed with full support for BCH, and what steps it had taken by that time.  Finally, the non-privileged documents that were reviewed by the "white shoe" law firms that investigated whether there was insider trading, should reveal whether the way in which Coinbase handled the trading of its employees, and the absence of any significant insider trading policy and enforcement mechanisms, was one of the causes of the failed Launch, and thus goes directly to the reasons for the fact that the Launch was so badly bungled (Request No. 5).[4] In fact, even Coinbase CEO Armstrong thought that the Launch was impacted by insider trading resulting in a lack of liquidity.

The requested documents also relate to Coinbase's potential defenses.  For instance, it is anticipated from Coinbase's testimony in other arbitration proceedings that it will argue that it had invested significant time and care into supporting this new digital asset, and that it had made the decision to support BCH based upon a wide variety of factors, including the volume of trading of BCH on other exchanges.  It is also anticipated that Coinbase will argue that on December 19, it opened the order book in post-only mode in time to allow sufficient liquidity to develop for BCH and that liquidity was reached within an hour, which is why it determined to support full trading.  It is thus essential that Coinbase be made to produce documents which relate both to why it determined to proceed with the Launch and why it halted trading, and to determine whether those defenses are provable. It is also essential that Coinbase be made to produce documents relating the investigation and disclosures to its employees, since it is expected that it will argue that trading was halted due to insufficient liquidity and an unusually high percentage of market buy orders that consumed liquidity. That raises the issue as to whether one of the causes of that illiquidity was Coinbase's own negligence in failing to enforce its employee trading policy and the scope of that policy.  It is also anticipated that Coinbase will argue that its employee trading policy  was put in place over a month before trading in BCH was enabled, raising the issue of whether it was in place on November 13th, when employees were informed that Coinbase was going to fully support trading in BCH.

In short, the requested documents are relevant and proportional to the needs of the case and limited to those allowed under the Discovery Order.

Defendant's Position

When this Court granted Coinbase's motion to stay the case, it ordered that discovery could proceed "only as to issues/material that would be used in arbitration proceedings." Dkt. No. 82. Under the AAA's rules for consumer arbitrations, which would govern any arbitration of this dispute, discovery is substantially more limited than that available in federal court. Specifically, parties have no entitlement to any pre-hearing disclosures (i.e., "discovery"), except as needed to provide for "a fundamentally fair process," and, although parties may identify *specific* documents and other information to be shared, "[n]o other exchange" is contemplated under the rules, keeping with the principle "that arbitration must remain a fast and economical process."

---

[4] Although claims based upon insider trading were dismissed, the Court indicated that Plaintiffs were not precluded from seeking a revival of those claims if discovery revealed a factual basis for reconsideration of the order. *Berk*, 2019 U.S. Dist. LEXIS 133939, at *11-12.  This discovery also relates to the possibility of reviving those claims.

1386619

Letter to Hon. Vince Chhabria
July 1, 2020
Page 4

AAA Consumer Arbitration Rule 22(a).[5] Indeed, the basic policy of conducting arbitration "is to offer a means of deciding disputes expeditiously and at lower costs," so arbitration requires only a "summary hearing … with restricted inquiry into factual issues." *Robbins v. Day*, 954 F.2d 679, 685 (11th Cir. 1992) (citations omitted); *see also Steele v. Lending Club Corporation*, No. 10-cv-02023-RS, 2018 WL 4773147, at *4 (N.D. Cal., Oct. 3, 2018) (an "[e]fficient, streamlined procedure is a fundamental attribute of arbitration").

Under this framework, any discovery requests must be narrowly tailored, requiring a showing of a particularized need. But Plaintiffs' requests far exceed this mandate. Coinbase discusses each in turn, beginning with the most overbroad demand.

- **The documents reviewed in connection with the internal investigation of the Launch** (Request No. 20)

This request relates to Plaintiffs' claim—dismissed with prejudice—of insider trading. Plaintiffs admit that they seek documents "reviewed by the 'white shoe' law firms ***that investigated whether there was insider trading***" (emphasis added), and suggest that the Court's dismissal of this claim is irrelevant due to the Court's comment on the hypothetical revival of the claim. Plaintiffs are wrong and the law is clear: while Plaintiffs may of course amend their complaint based on new evidence, they are not entitled to discovery related to claims already found deficient, and courts may not permit such discovery to proceed. As Judge Breyer recently explained, "Supreme Court and Ninth Circuit precedent bar discovery based on previously dismissed claims." *In re German Auto. Manufacturers Antitrust Litig.*, No. 3:17-MD-02796-CRB, 2020 WL 3060748, at *1 (N.D. Cal. June 9, 2020); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) ("Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise."); *Mujica v. AirScan Inc.*, 771 F.3d 580, 593 (9th Cir. 2014) ("[P]laintiffs must satisfy the pleading requirements of Rule 8 before the discovery stage, not after it.")

In an effort to avoid this conclusion, Plaintiffs now offer after-the-fact explanations for why these documents are "relevant and necessary" to their negligence claim, suggesting that they "reveal whether the way in which Coinbase handled the trading of its employees, and the absence of any significant insider trading policy … was one of the causes of the failed Launch." This explanation is nonsensical: indeed, this Court has already soundly rejected Plaintiffs' theory of insider trading, *see* Dkt. No. 75 at 6, and Plaintiffs have not explained (nor could they) how policies relating to insider trading could have any bearing on their claim that Coinbase failed to ensure sufficient liquidity in the Bitcoin Cash ("BCH") market.[6]

---

[5] *Available at:* https://adr.org/sites/default/files/Consumer%20Rules.pdf at p. 20.
[6] Plaintiffs claim that Coinbase's CEO "thought that the Launch was impacted by insider trading." Not so. Rather, he stated: 'I take the confidentiality of material non-public information very seriously as CEO' and pledged to investigate unfounded allegations of insider trading. That's a far cry from thinking the allegations had any merit, as Plaintiffs imply. More to the point, the Court has rejected this theory

1386619

Letter to Hon. Vince Chhabria
July 1, 2020
Page 5

Finally, this request exceeds the bounds of what Plaintiffs could demand even through formal discovery in federal court, given that it seeks documents underlying a privileged investigation. *See, e.g., In re Remec, Inc. Sec. Litig.*, No. 04CV1948 MMA (AJB), 2009 WL 10673008, at *1 (S.D. Cal. Feb. 20, 2009) (denying discovery requests seeking documents underlying party's investigation on basis that such materials were protected by privilege); *see also* Fed. R. Civ. P. 26(b)(3) (party may not discover documents prepared in anticipation of litigation).

- **Communications with employees regarding Coinbase's determination to provide full support for the trading of BCH** (Request No. 18)

As with Request No. 20, this request—which is not limited to specific custodians or even bounded in time—is not related to Plaintiffs' sole remaining negligence claim. As set forth above, Plaintiffs' theory of insider trading was soundly rejected by the Court, and there is no basis for Plaintiffs' suggestion that Coinbase's supposed failure to enforce an insider trading policy has anything to do with Plaintiffs' negligence claim, which is premised on Coinbase's alleged failure to maintain an orderly market. Accordingly, this request is neither relevant nor proportional to the needs of the case, and certainly does not fall within the narrow scope of specifically identified documents contemplated by the AAA rules.

- **The documents upon which defendants relied in determining to halt trading of BCH on December 19, 2017** (Request No. 17)

Like those above, this request hinges on now-dismissed claims. Specifically, the Court dismissed all of the claims related to Coinbase's decision to halt trading; as the Court explained, "Coinbase's decision to halt Bitcoin Cash trading … wasn't itself negligent." Dkt. No. 75 at 5. Accordingly, there is no justification for this request under the controlling authority discussed above. Moreover, it is undisputed that trading was halted due to insufficient liquidity. Accordingly, Plaintiffs have failed to show that such documents are necessary or proportional to the needs of the case under the AAA rules.

- **The documents which defendants reviewed or upon which they relied in determining to proceed with Launch of BCH when they did**. (Request No. 17).

This request is more reasonably related to Plaintiffs' remaining negligence claim, which is based on the alleged failure to ensure liquidity and market capitalization needed for an orderly market. However, in seeking all documents that Coinbase "reviewed" to proceed with the launch, this request goes beyond the restricted discovery into *specific* documents that the AAA rules permit. Requiring Coinbase to conduct a search across its operations to determine what its employees "reviewed" could turn arbitration into the kind of burdensome, inefficient, and expensive affair that the AAA's rules seek to prevent. However, Coinbase is willing to produce documents reflecting its action plan and goals in proceeding with the launch, to the extent they exist.

- **Communications with the Chicago Mercantile Exchange ("CME") concerning its launch of Bitcoin futures contracts** (Request No. 19).

Letter to Hon. Vince Chhabria
July 1, 2020
Page 6

It is hard to understand how this request, which seeks communications (unbounded in time) with anyone at the CME, could possibly relate to a claim of negligence by Coinbase: there is no plausible explanation for how communications with a third party *not involved in the launch* would relate to the elements of Plaintiffs' negligence claim (which asserts that Coinbase launched trading in BCH before there was sufficient liquidity). Moreover, Plaintiffs have not proffered any plausible explanation for why the launch of BCH trading on Coinbase's platform would have any effect on trading in futures contracts on a completely different digital currency (Bitcoin). And Plaintiffs offer nothing other than rank speculation—and certainly no good faith basis—for the allegation that any decision by the wholly separate CME had anything to do with its operations, much less any alleged negligence in relation to the BCH launch.

For the reasons discussed above, Plaintiffs have failed to show that the broad set of documents they seek are necessary to ensure a "fundamentally fair process," as required under the AAA rules. Accordingly, Coinbase asks the Court to deny Plaintiffs' request to compel Coinbase's responses to these demands.

Respectfully submitted,

**GREEN & NOBLIN, P.C.**

*/s/ Robert S. Green*

Robert S. Green


**KEKER, VAN NEST & PETERS LLP**

*/s/ Steven P. Ragland*

Steven P. Ragland

1386619